# IN THE MATTER OF J. ALFRED MAGOON, AN ATTOREY AT LAW.

### ORIGINAL.

TRIED MAY 15-22, 1905.         DECIDED JUNE 2, 1905.

FREAR, C.J., AND CIRCUIT JUDGES LINDSAY AND PARSONS IN PLACE OF HARTWELL AND WILDER, JJ.

ATTORNEY—*accepting retainer from adverse party, misconduct.*

An attorney for a judgment creditor is held guilty of unprofessional impropriety and misconduct for accepting from one of three joint judgment debtors, who had paid what he considered his share of the judgment, a retainer to bring creditors' bills against the other two debtors for the purpose of relieving the first mentioned debtor from further liability, even though such retainer was accepted with the consent of the judgment creditor and for the purpose of bringing such suits in the name and for the benefit of such creditor and to relieve the said debtor from further liability

only in so far as satisfaction should be obtained from the other debtors, there being, however, an understanding implied from the acceptance of the retainer for such purposes that further proceedings to collect the remainder of the judgment from the said debtor should be delayed until after such suits should be brought against the other debtors; but under all the circumstances it is deemed sufficient to severely censure the attorney and impose on him the costs of this proceeding.

This is an information for the disbarment, suspension or other punishmentw of J. Alfred Magoon, an attorney at law, for professional improprieties, malpractice and gross misconduct in substance as follows: (1) That on or about July 14, 1902, while acting as one of the attorneys for the plaintiffs in the case of H. R. Hitchcock, L. H. Dee, H. L. Evans and Charles J. Fishel on behalf of themselvec and all other stockholders in the Kamalo Sugar Company, Ltd., v. Frank Hustace, John J. Egan, Frank H. Foster and the Kamalo Sugar Company, Ltd., in which the plaintiffs had obtained a decree against the defendants Hustace, Egan and Foster jointly for $35,000, with interest and costs, and 6000 shares of stock of said company, upon which decree execution had been issued and partial satisfaction obtained by the payment by said Hustace of $11,951.57 and 5288 shares of said stock, the respondent accepted from said Hustace a retainer of $150 in the matter of advising him as to how he could escape from full liability under said decree and in the matter of enforcing the remainder of said decree solely against the property of said Egan and Foster; (2) that on or about said date the respondent, while acting as attorney for said plaintiffs and said Hustace as aforesaid, and while said decree was unpaid, except in part as aforesid, and knowing that Hustace had property from which the decree could be satisfied in large part and that it was for the interests of the said plaintiffs to proceed against Hustace's property, advised Hustace to make a deed of all of his property to some third party, without adequate consideration, thereby disposing of his assets, hindering, delaying and defrauding his

creditors the said plaintiffs as well as any other creditors; (3) that said advice was given under claim by respondent that he would thereby be able to have said execution returned unsatisfied and would thereupon proceed by creditor's bill against Hustace's codefendants, said Egan and Foster, to set aside conveyances alleged to have been made by them in fraud of their creditors, alleging in such creditor's bill the return of execution unsatisfied; that thereafter on or about September 3, 1902, Hustace made deeds of all his property to various third persons including a deed of one parcel to one W. H. Smith, and a deed of sundry parcels to one Charles Hustace, Jr., but that the respondent did not proceed against said property of Egan and Foster, but, while retaining the retainer paid by Hustace, proceeded as attorney for said plaintiffs to cause execution to be levied on the property so conveyed by Hustace, causing the same to be sold at sheriff's sale on or about January 8, 1903, and thereafter as attorney for L. H. Dee, one of the purchasers at such sale, brought a suit against said Smith to set aside the conveyance made to him by Hustace as fraudulent and in such suit attacked all of said conveyances by Hustace as fraudulent.

Much testimony was taken and many exhibits, including the records in the two cases above mentioned, were filed.

Per curiam: The crucial questions are whether the relation of attorney and client was created between the respondent and Hustace by the payment to the former by the latter of the retainer of $150, and whether, if so, the matter in respect of which that retainer was paid was one in which the interests of the respondent's two clients, the Kamalo Sugar Company and Hustace, were adverse. If either of these questions is decided in the negative, nothing remains in the case so far as the evidence shows that would call for the punishment of the respondent in this quasi-criminal proceeding.

While the respondent may have acted originally for the nominal plaintiffs in the Kamalo case the suit was in reality for the benefit of the company and at the times in question he

was apparently acting for the company itself, the directors of which had come, by reason of changes in their personnel, into harmony with the nominal plaintiffs. There was no reason why the respondent could not in such case act at the same time for the nominal plaintiffs and for the company, which, though nominally a defendant, was for all practical purposes the real plaintiff, and in favor of which rather than in favor of the nominal plaintiffs the decree was actually rendered.

With the consent of his client the company, the respondent might have pursued Egan and Foster by execution or creditor's bill or otherwise before proceeding further by execution against Hustace, who had already paid what he supposed was his share under the decree. He was already, with such consent, as he supposed, proceeding against the property of Egan and Foster by execution before proceeding further against that of Hustace, and he supposed that he had such consent to so proceed by creditor's bill or other suit also. The fact, if it was a fact, that Dee, who represented the nominal plaintiffs and the company in their dealings with the respondent and who communicated such supposed consent to him, did not have formal or strictly legal authority to such an extent from the directors or the stockholders is immaterial so far as the question of the quasi-criminal liability of the respondent is concerned, even if it would render him liable to criticism for carelessness or lack of good judgment or perhaps render him civilly liable. The question of ultra vires does not affect this case, although there might be circumstances under which it might affect a case of this general nature. There is no doubt that the directors and most if not all of the stockholders were agreeable to proceeding against Egan and Foster by execution at least, before proceeding further against Hustace.

The respondent might also without being quasi-criminally liable, so far as his duty to his client the company was concerned, have discussed with Hustace as an adverse party and with the consent which, he supposed he had, of the company, the proposition of Hustace's putting his property out of his

name so as to enable the company to proceed by creditor's bill against Egan and Foster on condition that Hustace should first give adequate security for the payment of the decree in case of failure to obtain satisfaction from Egan and Foster. The respondent did not advise Hustace to transfer his property for the purpose of enabling him to escape liability under the decree to the prejudice of the company. He suggested and perhaps advised that a transfer of the property might or should be made so as to remove a supposed legal obstacle to the bringing of the creditor's bill against Egan and Foster, which obstacle was discovered in looking up the law preparatory to bringing the Creditor's bill. The object was to proceed against Egan and Foster and to relieve Hustace only in so far as payment should be obtained from the others, and the transfer by Hustace was to be made, if at all, only in case he gave satisfactory security for the protection of the company. Apparently Hustace, in transferring his property, acted largely on the advice of others.

Proceeding against Hustace afterwards by execution upon the transfer of his property without giving such security was justifiable if the relationship of attorney and client did not exist between the respondent and Hustace.

Whether the course discussed or proposed or advised would, if consumated, have resulted in a fraud upon the court does not appear. The negotiations or propositions had not gone far enough to show what the result might have been in that respect. Apparently the respondent was doing what he believed was right and with no intention of perpetrating a fraud upon the court and with the idea of effecting justice to Hustace without either prejudice to his client, the Kamalo Sugar Company, or fraud upon the court. We may differ from the respondent as to the advisability or wisdom of his conduct in these respects and other respects to which no reference need be made, but cannot hold him quasi-criminally liable therein.

To return to the crucial questions set forth above, was the relation of attorney and client created between the respondent and Hustace by the payment of the retainer? There is much

to indicate that such was not the case but that the respondent was to act thereafter, as he had previously acted, solely as attorney for the Kamalo Sugar Company, and not as attorney for Hustace, and that Hustace paid the retainer simply on behalf of the Kamalo Sugar Company, which was supposed to be willing to proceed by creditor's bill or other suit as well as by execution against Egan and Foster before proceeding further against Hustace, provided the latter would pay the expenses of such litigation.   There is testimony in support of this, not only by the respondent and Dee, who, as already stated, was the representative of the company in its dealings with the respondent, but also by Hustace, the principal witness for the prosecution, although the testimony of the latter as a whole and some of Dee's tends in the opposite direction, and some of the repondent's upon this point is not as clear as.it might be. The respondent laso consulted several times with Mr. Robertson who was Hustace's attorney in the Kamalo suit, although he also had several consultations with Hustace in his own office when Mr. Robertson was not present.  ʻThe respondent also testified that in his discussions with Hustace he cautioned him not to disclose what property he had as he, respondent, might have to proceed against it later on.   There is also other evidence tending in the same direction.

On the other hand there is evidence of a more or less forcible character, some of it, unfortunately for the respondent, consisting of statements approved or made, both orally and in writing, by himself, which tends to show that even he considered that he was retained to a certain extent at least to act for Hustace as well as for the Kamalo Sugar Co.   For instance, in his written communication of February 24, 1905, to the "Advertiser" he says, "In this distress he (Hustace) came to me.   I, representing the Kamalo Sugar Company, was the only person in all the world who could help him.   My antagonist came to me asking for mercy and justice.   Fool, that I did not turn a deaf ear; but I was only too willing to come to his aid provided I could do so without prejudicing my client, the Kamalo Sugar

Co., the directors of which have approved of all that I have done. All I asked of Hustace was $150 retainer, out of which I would be obliged to advance costs; this he freely paid. A moderate retainer alone would have been $500, and the work I did amounted to more than the $150, which I received." And in his answer the respondent relies upon and sets forth what he considers a ratification of his acts signed by the directors of the company, in which the latter say, among other things, "We therefore heartily approved of the suggestions made by Mr. Dee, that proceedings should be attempted against Egan and Foster, and it was perfectly agreeable to us that Mr. J. Alfred Magoon should act as attorney for Mr. Hustace with the above end in view, provided Mr. Hustace should see fit to employ him." This document was apparently prepared in Mr. Magoon's office and was taken around to the directors for their signatures by Mr. Lightfoot of Mr. Magoon's office. The retainer was recently returned by the respondent to Mr. Hustace.

The fact that the suits were to be brought in the name of the company does not show that the respondent was not retained by Hustace any more than the fact that the retainer was paid by Hustace would necessarily show that he was retained by Hustace.

If the relation of attorney and client was created between the respondent and Hustace, was it a matter in which the interests of the Kamalo Sugar Company and Hustace were adverse? The retainer was paid for the institution of suits by the Kamalo Sugar Company against Egan and Foster for the purpose of relieving Hustace from further payments in so far as payments could be compelled from Egan and Foster. If the bringing of such suits for the purpose of enforcing payments from Egan and Foster, or even for the purpose also of relieving Hustace thereby, had been the sole object of the retainer, there would have been no impropriety in accepting it, for to that extent the interests of the Kamalo Sugar Company and Hustace were not adverse. But that was not the sole object. It could not very well have been the sole object in fact, and was not the sole object contemplated as shown by the testimony of all the witnesses. The

proposition contained by implication the postponement of further proceedings against Hustace for a time at least. If the respondent was the attorney of the company alone he could properly have proceeded at any time against Hustace upon instructions to do so from the company, notwithstanding the institution or prosecution of the suits against Egan and Foster. But if he was attorney for Hustace as well under a retainer given by Hustace for the very purpose of relieving him so far as possible from further payments and for proceeding against Egan and Foster solely for that purpose, he could not properly proceed upon instructions from his client the company against his client Hustace until proceedings had first been taken against Egan and Foster. That the interests of the two clients were adverse to a certain extent was very soon shown by the subsequent developments above set forth. The fact, if it was a fact, that the respondent acted in this dual capacity by the consent of both clients would not make it right for him to do so although it would be a mitigating circumstance to be considered in determining the amount of the penalty.

In our opinion the relation of attorney and client was created between the respondent and Hustace in a matter in which a similar relation existed between the respondent and the Kamalo Sugar Company and in which the interests of the two clients, the company and Hustace, were adverse. But such relationship between the respondent and Hustace was of a very loose character. The respondent was regarded by all as primarily at least the attorney for the company. So far as bringing the suits against Egan and Foster was concerned, which was the direct object of the retainer, the interests of the respondent's two clients, the company and Hustace, were not adverse. So far also as relieving Hustace by compelling payment from Egan and Foster was concerned, which was the indirect object of the retainer, the interests of the two clients were not adverse. The particular in which such interests were adverse was the delay in proceeding further against Hustace—a matter of implication, in respect of which it was not clear at that time that there would

be any occasion to act in a manner adverse to the interests of one of the clients. The moving cause of Hustace's paying the retainer was the avoidance of the expense to the company. The mistake consisted in accepting it as a retainer from Hustace instead of having it paid so that it would clearly be a retainer from the company alone. These matters occurred nearly three years ago. The respondent supposed that he was doing only what was proper and with the consent of his client, the company. But he should have known better.

The respondent is found guilty of professional impropriety and misconduct, but in view of all the circumstances it is deemed sufficient to severely censure him and require him to pay the costs of this proceeding, and it is so ordered.

*S. M. Ballou,* deputy attorney general, for the prosecution.

*Respondent* in person; *J. Lightfoot* and *W. A. Whiting* with him.