514

**LASKEY BROS. OF W. VA., Inc., et al., Plaintiffs,**

v.

**WARNER BROS. PICTURES, Inc. (In Dissolution), et al., Defendants.**

**AUSTIN THEATRE, Inc., et al., Plaintiffs,**

v.

**WARNER BROS. PICTURES, Inc. (In Dissolution), et al., Defendants.**

United States District Court
S. D. New York.

March 29, 1955.

Order Affirmed July 13, 1955.

Malkan & Ellner, New York City, for plaintiffs. Arnold G. Malkan, J. Robert Ellner, New York City, of counsel.

Frisch & Goldfluss, New York City, for defendant United Artists Theatre Circuit, Inc.

Louis M. Weber, New York City, for defendant Skouras Theatres Corp.

Meyer H. Lavenstein, New York City, for defendant Republic Pictures Corp.

Jaffe & Stern, New York City, for defendants, Allied Artists Pictures Corp. and Allied Artists Distributing Corp.

Schwartz & Frohlich, New York City, for defendants, Stanley Warner Corp., Stanley Warner Management Corp., Columbia Pictures Corp. and Fabian Theatres Corp.

R. W. Perkins, New York City, for defendants, Warner Bros. Pictures, Inc. (In dissolution), Warner Bros. Pictures, Inc. (Delaware) and Warner Bros. Distributing Corp.

O'Brien, Driscoll & Raftery, New York City, for defendants, RKO-Keith-Orpheum Theatres, Inc. and RKO Theatres Corp.

Weisman, Celler, Allan, Spett & Steinberg, New York City, for defendant Metropolitan Playhouses, Inc.

Lawrence R. Condon, New York City, for defendants Jamestown Amusement Co., Inc., and Shea Enterprises, Inc.

John H. Galloway, Jr., Yonkers, N. Y., for defendant Kallet Theatres, Inc.

Dwight, Royall, Harris, Koegel & Caskey, New York City, for defendants, Twentieth Century-Fox Film Corporation (In dissolution), Twentieth Century-Fox Film Corp. (Delaware).

Adolph Schimel, New York City, for defendants Universal Pictures Co., Inc., Universal Film Exchanges, Inc., Big U Film Exchange, Inc. (dissolved).

Benjamin Melniker, New York City, for defendant Loew's, Inc.

Louis Phillips, New York City, for defendants Paramount Film Distributing Corporation, Paramount Pictures, Inc. (In dissolution) and Paramount Pictures Corp.

Phillips, Nizer, Benjamin & Krim, New York City, for defendant United Artists Corp

J. Miller Walker, New York City, for defendants, RKO Radio Pictures, Inc. and RKO Pictures Corp.

Howard M. Antevil, Gloversville, N. Y., for defendant Schine Circuit, Inc. Bruce Bromley, Louis Phillips, John L. O'Donnell, and Leo P. Arnaboldi, Jr., New York City, of counsel.

DAWSON, District Judge.

This matter presents the issues as to whether (1) a law firm and both the members thereof are disqualified from representing a plaintiff in an action where one of the members in the firm had previously represented the adverse parties in similar litigation and had, as a result of such litigation, been in a position to receive confidential information from such former clients; and (2) if, by reason of such facts, the firm, and both the members thereof, are disqualified from representing the plaintiff, does the disqualification continue as to addi-

tional new cases as to an individual partner when the partner who has previously been in the adverse position severs his connection with the firm.

The matter comes on for determination as a result of a motion made by plaintiffs for an order that the law firm of Malkan & Ellner, and the members thereof, Arnold G. Malkan and J. Robert Ellner, may properly represent and are not barred or disqualified from representing the plaintiffs in these actions.

The defendants have cross-moved for an order disqualifying Arnold G. Malkan and J. Robert Ellner, both individually and as a firm, from representing the plaintiffs in the above-entitled actions or, in the alternative, staying all further proceedings in the above-entitled actions, in accordance with the provisions of a stipulation, dated February 3, 1953, in an action now pending in the United States District Court for the Eastern District of New York entitled Fisher Studios, Inc., et ano. v. Loew's, Inc., et al., Civil Action No. 12920, and staying all further proceedings in these actions pending the final determination of the matters raised in this motion.

This is a triple damage and injunction action under the anti-trust laws. The complaints were filed on November 8, 1954. Within fifteen days thereafter, plaintiffs' attorneys brought on this motion for an order declaring that the present attorneys are not disqualified from representing the plaintiffs in the action.

The fact that the plaintiffs' attorneys found it necessary to apply for an order that they were not disqualified from representing plaintiffs is unusual. It appears that on November 7, 1952, Judge Abruzzo, in the Eastern District of New York, in an action entitled Fisher Studios, Inc., et ano. v. Loew's, Inc., et al., Civil Action No. 12920, signed an order directing plaintiffs in that action and Arnold G. Malkan and David H. Isacson, practicing law as the firm of Malkan & Isacson, to show cause why the said firm and each member thereof should not be disqualified from acting as attorneys for the plaintiffs in that action.

The matter was referred to a Special Master.

In the hearings before the Master, defendants sought to show, among other things, that Mr. Isacson, while employed as an attorney by the firm of Sargoy & Stein, a law firm which represented, and still represents, the principal defendants in certain matters, had access to and did, in fact, obtain confidential information concerning the business of the defendants which he and the firm of Malkan & Isacson would be able to use against them in the anti-trust action. Defendants asserted not only that Mr. Isacson's retainer would involve disclosure of confidences, but also that he had unethically solicited clients to bring anti-trust suits against the motion picture companies. Long hearings were held before the Special Master and on August 19, 1953, Harold F. McNiece, Esq., as Special Master, rendered a Report in which he held that the defendants had clearly shown both solicitation and abuse of confidential relationship and that, accordingly, the interests of justice required that Mr. Isacson and the firm of Malkan & Isacson be disqualified from representing the plaintiffs in that action.

In the course of the hearings before the Master, and on February 3, 1953, the defendants, the plaintiffs, Mr. Isacson, and Malkan & Isacson stipulated to stay all other actions involving the defendants in which Malkan & Isacson were opposing counsel. In order to avoid a multiplicity of motions, this stipulation further provided:

"11. If it shall be finally determined in this action that David H. Isacson and Malkan & Isacson are qualified or disqualified, and if such determination in this proceeding is that such qualification or disqualification embraces 35 mm. anti-trust actions, 16 mm. anti-trust actions and under-reporting actions, such determination shall be binding upon David H. Isacson, Malkan & Isacson and the defendants herein, in all cases involving 35 mm. anti-trust actions, 16 mm. anti-trust actions

and under-reporting actions, including those hereinabove mentioned."

On April 14, 1954, Judge Abruzzo entered an order confirming the Special Master's Report and authorizing the entry of an order directing the disqualification of David H. Isacson and the firm of Malkan & Isacson from representing the plaintiffs in the Fisher action.

Some of the defendants in that action are also defendants in the present action.

█ It appears from testimony taken before me that the firm of Malkan & Isacson was established in or about July of 1952 and was dissolved on or about July 1, 1954; that on or about August 1, 1954, the firm of Malkan & Ellner was formed.[1] Thereafter, the present two actions were instituted by this firm of Malkan & Ellner. The Arnold G. Malkan in that firm was the Malkan who had been a member of the firm of Malkan & Isacson.

On November 9, 1954, Judge Abruzzo signed an order to show cause in the Fisher Studios matter directing the plaintiffs and Arnold G. Malkan and J. Robert Ellner, individually, and the firm of Malkan & Ellner to show cause why the aforesaid stipulation should not be deemed binding upon the said Arnold G. Malkan, his present law firm of Malkan & Ellner, and the members thereof, and why such firm should not be disqualified from acting as attorneys for the plaintiffs in all 35 mm. anti-trust actions, 16 mm. anti-trust actions, and percentage under-reporting actions in which the parties plaintiff or defendant include motion picture producing or distributing companies represented by the law firm of Sargoy & Stein during the employment by such firm of said David

H. Isacson as an attorney on the firm's staff.

On March 22, 1955, Judge Abruzzo handed down an order which provided, in part:

"And It Is Further Ordered And Adjudged that the said stipulation dated February 3, 1953 is binding upon the firm of Malkan & Isacson, David H. Isacson and Arnold G. Malkan, as a member of the firm of Malkan & Isacson and upon any firm with which they or any of them may now or hereafter be associated in all cases now pending in all courts as well as the cases which might hereafter be brought involving 35 mm. anti-trust cases, 16 mm. anti-trust cases and/or under-reporting cases in which the defendants herein or any of them are or may be parties;

"And It Is Further Ordered And Adjudged that the defendants are and shall be within their legal rights in all cases now pending or hereafter to be brought in which the defendants herein or any of them are or may be parties involving 35 mm. anti-trust cases, 16 mm. anti-trust cases and/or under-reporting cases to urge the contents of said stipulation of February 3, 1953, this order, and the decisions heretofore rendered in this cause against Arnold G. Malkan as a member of the firm of Malkan & Isacson."

In the opinion of Judge Abruzzo of February 24, 1955, which preceded the entry of the foregoing order, he stated:

"With regard to other actions pending in other district courts of a similar nature, the defendants in this motion have requested an order

---

1. Mr. Malkan stated that his partnership with Mr. Isacson and his present partnership with Mr. Ellner have not been real partnerships "because neither of them share in any losses". As to Mr. Ellner, he said: "I felt that it would be a nice thing for Mr. Ellner to have his name associated as a partner. It would help him bring in business and would not

cost me anything in particular and, again, he was not to share in any of the pending cases, except in my discretion". It is a violation of the standards of ethics of the legal profession for attorneys to hold themselves out as a partnership where no partnership, in fact, exists. See "Legal Ethics" by Henry S. Drinker, p. 204, and opinions cited therein.

that the stipulation of February 3d be invoked in those cases. I have no power to make an order which would be binding on these courts. Undoubtedly, defendants have the legal right in these jurisdictions to urge the contents of the stipulation of February 3, 1952, and the decisions heretofore rendered in the instant case."

We thus have a judicial construction by Judge Abruzzo of the effect of the stipulation entered into in the proceeding which was pending before him. It was his determination that the stipulation was binding upon the individual members of the firm of Malkan & Isacson and upon any firm with which they, or any of them, may now or hereafter be associated in all cases now pending in all courts, as well as the cases which might hereafter be brought of the nature described in his order.

In order that the relationship of Mr. Malkan to the firm of Malkan & Ellner and the plaintiffs in the above-entitled actions might be ascertained, I held a hearing at which testimony was taken. The testimony of Mr. Malkan indicated that when he formed a partnership with Mr. Isacson in 1952, it was agreed between them that as to matters which Mr. Isacson might bring into the firm and as to motion picture litigation, the fees would be shared equally between them. Mr. Malkan further testified that there was no written agreement of dissolution of the firm of Malkan & Isacson, but a fair summary of the situation would be to say that Mr. Malkan took over most of the anti-trust actions then pending in the office and that Mr. Isacson took over most of the general matters. He stated that most of the motion picture anti-trust actions had been taken on a contingent fee basis, and that although Mr. Isacson had brought most of them in and had done a substantial part of the work which had been done on them, Mr. Isacson retained no interest in any fees that thereafter might be collected on any contingent fee arrangements. He stated, however, that there was no

written agreement with Mr. Isacson to this effect, but indicated that he had paid Mr. Isacson $5,000 for services rendered in connection with other anti-trust actions, and that this was considered by him to be in full settlement of any interest that Mr. Isacson had in the firm or in any matters pending in the firm. The lack of any formal agreement of dissolution or any formal settlement of the affairs of the firm is strange. It might be contended that Mr. Isacson either had a continuing interest in any contingent fees that might thereafter be obtained on cases brought to the office by him or, in the alternative, that the $5,000 paid to him was a payment for any claim that he might have to share in those contingent fees.

With respect to the two cases now pending in this Court, Mr. Malkan testified that the Laskey Bros. matter first came to the firm of Malkan & Isacson through Mr. Isacson, and that he had not met Mr. Laskey until after the dissolution of the firm of Malkan & Isacson. Mr. Malkan further testified that an action was brought in the Western District of Pennsylvania in 1953 by Laskey Bros. of West Virginia, Inc. through the firm of Malkan & Isacson; that the suit is still pending in Pennsylvania; and that the suit in the Western District of Pennsylvania involves the same issues as the suit which was brought in New York; but that the instant case in New York was brought after the firm of Malkan & Isacson was dissolved.

Mr. Malkan testified that so far as the second action, wherein the plaintiff is Austin Theatre, Inc., he had not been approached with respect to being retained until sometime in September of 1954, at which time the firm of Malkan & Isacson had been dissolved and the firm of Malkan & Ellner formed; that this referral had come to him totally apart from his previous partnership with Mr. Isacson and that as far as he knew, the principals in the Austin Theatre case did not know Mr. Isacson.

 Of course, after the dissolution of the firm, each partner was free to

practice law individually, and that included the right to receive retainers from persons who had been clients of the former firm. Talley v. Lamb, Sup.1950, 100 N.Y.S.2d 112, 118.

■ It is a fundamental principle that the obligation to represent a client with undivided fidelity "forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed." [2]

■ Where an attorney does accept a retainer or employment from others in matters adversely affecting any interest of a client with respect to which confidence has been reposed, the Court may disqualify such attorney "and any firm with which he may be associated" from participating in the matter where the conflict arises. [3]

As to Mr. Isacson and the firm of Malkan & Isacson, the finding that such conflict existed appears sufficiently from the record before Judge Abruzzo, and from the determination of Judge Abruzzo, and from the stipulation entered into in the course of· that proceeding which was signed by Mr. Isacson and the firm of Malkan & Isacson. No further testimony thereon is necessary.

However, when Mr. Malkan and Mr. Isacson dissolved their firm, does that disqualification continue as to all future activities of Mr. Malkan in motion picture anti-trust cases, as well as the activities of Mr. Isacson? That is the question which is before this Court. [4]

The factual situation with reference to the two separate actions involved in this motion would seem to require a separate determination as to each action.

■ The first case, in which the plaintiffs include Laskey Bros. of West Virginia, Inc., came to the firm of Malkan & Isacson at a time when that firm was disqualified from handling it. The fact that the instant action was brought in this Court after the firm was dissolved should make no difference in the qualification of Mr. Malkan to handle the case, inasmuch as the action is based upon the same set of facts as the one which Malkan & Isacson previously had been retained to institute, and which that firm has instituted, in Pennsylvania. At the time of the retainer, Mr. Isacson was disqualified from handling any such case; and since Mr. Malkan was then his partner, he was equally disqualified from handling the case. [5]

As Mr. Malkan, as well as Mr. Isacson, was disqualified from handling that case at a time when it first came to their

---

2. American Bar Association Canons of Professional Ethics, Canon 6; see Rule 5, Subdivision (c) of the General Rules of the United States District Court for the Southern District of New York whereby the Canons were adopted as rules of the Court.

3. Consolidated Theatres v. Warner Bros. Cir. Man. Corp., 2 Cir., 1954, 216 F.2d 920, 928.

4. It has been urged by Mr. Malkan that the disqualification does not extend to him after he has once severed his relationship with Mr. Isacson. He urges that in the Consolidated Theatres case, to which reference has been made, although . the firm of Gold & Nickerson and Mr. Nickerson, individually, were disqualified from representing the plaintiff, Mr. Gold continued, and continues, to represent the plaintiff in that action. Mr. Malkan urges that the defendants in that case sought to have Gold disqualified and

were not successful. However, it appears that there was no mention of that particular point in the Court of Appeals decision, and the reason may perhaps be found in Judge Goddard's unreported opinion in the District Court, where the following statement appears:

"Defendants conceded before the Master that any question as to the ethical duties of Mr. Gold, separate and apart from any partnership with Mr. Nickerson, is not involved in this proceeding, and to that view the attorneys for Gold & Nickerson have subscribed." Consolidated Theatres, Inc., et ano. v. Warner Bros. Circuit Management Corporation, et al., Civ. No. 65–254 (S.D.N.Y. July 21, 1953).

5. The disqualification of one partner is a disqualification of all of the partners. Such disqualification would also apply to attorneys, not partners, having offices together. Where such situation exists, both partners, or the partner and the as-

office, this disqualification cannot be cured by the dissolution of the partnership. Once the attorney was disqualified from handling the case, he remains disqualified.

■ As to the second case involving Austin Theatre, Inc., it appears that the case first came to Mr. Malkan after the partnership with Mr. Isacson had been dissolved and that Mr. Isacson had never had any association with that case. The only basis of disqualifying Mr. Malkan (and his present firm of Malkan & Ellner) in connection with that action would be that having once been a partner with a man who was disqualified from handling a case of that nature, he could never thereafter handle such a case; or on the further ground that by reason of his partnership with Mr. Isacson, he had acquired confidential information from Mr. Isacson in violation of Mr. Isacson's duty to his former client. There has been no evidence presented that Mr. Malkan acquired such confidential information, and the burden would be upon the defendants to assert or offer proof that he had acquired such confidential information. This they have not done.

■ I do not believe that it can successfully be contended that because an attorney not otherwise disqualified has been a partner of, or associated with, a man who was disqualified from handling a particular type of litigation, that he remains disqualified forever, even after the disqualified person's association with the litigation terminates.[6]

Judge Abruzzo has construed the stipulation of February 3, 1953 not only as binding upon David H. Isacson and Arnold G. Malkan, as members of the firm of Malkan & Isacson, but also upon any firm with which they, or any of them, may now or hereafter be associated. I do not so construe the stipulation. It

is certainly binding upon the firm of Malkan & Isacson, for it is signed on behalf of that firm; but there is no indication that it is binding upon the individuals who comprised the firm, when their relationship with the firm has terminated. The stipulation was not signed by Mr. Malkan individually.

Under Section 20 of the Partnership Law, McK.Consol.Laws, c. 39, the act of any partner, including the execution in the partnership name of any instrument, "for apparently carrying on in the usual way the business of the partnership of which he is a member" binds the partnership; but an act of a partner "which is not apparently for the carrying out of the business of the partnership in the usual way" does not bind the partnership unless authorized by the other partners. For example, under this provision of the statute, one or more, but less than all, of the partners have no authority to do any act which would make it impossible to carry on the ordinary business of the partnership, to confess a judgment, or to submit a partnership claim or liability to arbitration or reference.[7]

In Commissioner of Internal Revenue v. Whitney,[8] the Court of Appeals said, 169 F.2d at page 567:

"It is a matter of well-understood history (to which we have often referred, as in the cases from this circuit cited below) that the drafters of the [partnership] act rejected the entity theory for 'the common law or aggregate theory.' * * * Accordingly the assent of all the partners is necessary in order to dispose of the goodwill of the business, or to do any act making it impossible to carry on its ordinary business, or to assign a partner's right in specific property of the firm."

sociate, should retire from the case. Drinker, "Legal Ethics", p. 106, and opinions there cited.

6. See T. C. Theatre Corp. v. Warner Bros. Pictures, Inc., D.C.S.D.N.Y., 1953, 113 F. Supp. 265 and Harvey v. Harvey, 1930, 202 Wis. 553, 231 N.W. 580, where attorneys associated, in the trial of an ac-

tion, with disqualified counsel, were not found disqualified themselves.

7. See, for example, Scanlon v. Kuehn, 2d Dept., 1929, 225 App.Div. 256, 232 N.Y.S. 592; Riley v. Larocque, N.Y.Co., 1937, 163 Misc. 423, 297 N.Y.S. 756.

8. 2 Cir., 1948, 169 F.2d 562, certiorari denied, 1948, 335 U.S. 892, 69 S.Ct. 246, 93 L.Ed. 429.

It is equally true that the assent of all the partners would be necessary to an agreement which would forfeit each individual partner's right to engage in a particular line of business.

I do not believe that the stipulation signed on behalf of Malkan & Isacson (but not signed individually by Malkan) can be construed as binding the individual members of that firm when they were no longer members of that firm. It would stretch the theory of partnership authority very far to assume that a stipulation that the firm would not participate in certain types of business, signed on behalf of a firm, was binding not only on the firm but also upon the individual partners after the firm was dissolved and for as long as any of them might live. Certainly, it was not an agreement for carrying on the business of the partnership.

With respect to Laskey Bros. of W. Va., Inc., v. Warner Bros. Pictures, Inc. (In Dissolution), motion denied; cross-motion granted.

With respect to Austin Theatre, Inc., v. Warner Bros. Pictures, Inc. (In Dissolution), motion granted; cross-motion denied.

Settle order on two days' notice.