Leon D. Lazer, J.
During the course of a nonjury trial and in the midst of cross-examination of plaintiff’s principal witness by defendant’s attorney, the court discovered that the cross-examiner was also the witness’ lawyer. The propriety of the attorney’s action and the obligations of the trial court are thus the subject of this opinion. The facts follow.
Plaintiff brought an action against the estate of Charles W. Trench ¡(Trench) alleging that the deceased had entered into a joint venture with it to construct the Glen Oaks Country Club golf course in Old Westbury. During the course of the project, Trench died and the undertaking was completed at a claimed loss of $90,000. The complaint seeks the recovery of one half of the loss from the estate.
Plaintiff’s theory of liability is based on the allegedly unauthorized act of Trench in signing the joint venture agreement as an officer ¡of Landscaping by Country Gardens, Inc. (Landscaping). It is asserted that, unknown to the plaintiff, Trench had already sold his stock in Landscaping and was no longer an officer or director when he executed the agreement on its behalf and therefore it is he who became personally liable to plaintiff.
Proof of Trench’s lack of authority rested entirely on the testimony of Robert Gettinger (Gettinger), the sole remaining *181 stockholder of Landscaping and the individual who acquired the deceased’s corporate interest.
Almost at the outset of Gettinger’s direct examination by plaintiff, defendant’s attorney (hereafter referred to as “ counsel ”) objected under the dead man statute (CPLB. 4519) to any testimony relating to the witness’ transactions with the deceased. The objection was grounded on counsel’s argument that Gettinger was interested in the event; if plaintiff prevailed in the law suit against the defendant, it would be collaterally estopped from suing Landscaping for the alleged loss; if the defendant prevailed, Landscaping would be liable to plaintiff for one half of the joint venture loss since ratification or authorization of the joint venture agreement by Landscaping was implicit in such a result. The court overruled the objection on the ground that while an interest existed it did not fall within the ambit of CPLB 4519. The attorneys were instructed to. submit posttrial briefs on the issue.
During the direct examination of Gettinger by plaintiff’s attorney, counsel asserted that a letter from plaintiff’s lawyer to Landscaping stating that plaintiff would not sue it did not constitute a release. Thereafter, on two occasions the same examination, counsel suggested that the witness be advised of his privilege against self incrimination. Although the court remarked upon the unusual source of the request for a warning, the privilege was not invoked.
The climactic cross-examination of Gettinger by counsel concerned the use of Landscaping’s letterhead by Trench’s successors during the Glen Oaks project. The following extract from the record brought on the issue now before the court:
“ Q. Well, isn’t it a fact that — and you tell me whether I’m right or wrong, because I may be wrong and I don’t want to put words in your mouth — but isn’t it a fact that these letters went out on your letterhead because you were the general contractor on the contract?
A. You know damn well that’s not true.
Q. I don’t know that at all.
A. You do.
Q. I take it your answer is no ”.
Gettinger’s statement under oath that his cross-examiner had personal knowledge that Landscaping was not the general contractor on the Glen Oaks job evoked inquiry by the court as to his relationship with counsel. The witness replied that cross-examining counsel had been and still was his lawyer. The trial was promptly recessed and a brief ad hoc hearing was held in chambers to ascertain whether counsel’s disqualification was *182 necessary. Counsel forcefully defended his position which was based on the consent of both the defendant and G-ettinger to his current role in the litigation. Another lawyer, he averred, had represented Landscaping in connection with the Glen Oaks project. The case was then adjourned pending determination of the disqualification issue and counsel agreed to furnish the court with a brief supporting his position.
Although the earliest provision of law regulating the professional conduct of lawyers was enacted in England in 1275, it was not until 1887 in Alabama that the first American Code of Professional Ethics was adopted. This was followed in 1908 by the American Bar Association’s Code of Ethics containing 32 canons (Drinker, Legal Ethics, pp. 14, 23-25). The New York State Bar Association (NYSBA) adopted its Canons of Professional Ethics in 1909 but since 1970 the minimum standards of professional conduct expected of New York lawyers have been set forth in the Code of Professional Responsibility promulgated by the American Bar Association (ABA) in 1969 and adopted by the NYSBA effective January 1, 1970. While the canons contained in the code do not possess the force and effect of statutes, they have come to be recognized by Bench and Bar as establishing standards and rules of professional conduct (Matter of Duffy, 19 A D 2d 177; Erie County Water Auth. v. Western N. Y. Water Co., 304 N. Y. 342, cert. den. 344 U. S. 892). They therefore constitute a safe guide in ascertaining whether professional misconduct exists and a lawyer may be disciplined for not observing them (Matter of Heirich, 10 Ill. 2d 357). Unlike its predecessor, The Canons of Professional Ethics, the 1970 code provides that its disciplinary rules are mandatory in the sense that they state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action (Wise, Legal Ethics [2d ed.], 1970, p. 342.).
Entitled ‘ ‘ A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client,” canon 5 of the code is applicable to the instant issue. EC 5-14 provides as follows : ‘ ‘ Maintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interest, whether such interests be conflicting, inconsistent, diverse, or otherwise discordant.”
EC 5-15 of the code states that all doubts should be resolved against the propriety of such representation and a lawyer should *183 never represent in litigation multiple clients with differing interests. The disciplinary rules applicable to canon 5 direct a lawyer to decline or discontinue proffered or existing multiple employment on behalf of a client unless “it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure ”. (DR, 5-105, subd. [0].)
Conflicting interests are those which are hostile, antagonistic, or in conflict with each other (7 0. J. S., Attorney and Client, § 47). A lawyer represents conflicting interests when in behalf of one client, it is his duty to contend for that which duty to another requires him to oppose (Canons of Professional Ethics, canon 6). The conflict, then, is between the clients to each of whom the attorney is bound by the rules governing fiduciaries (Wise, Legal Ethics [2d ed.], p. 257) and to each of whom he has the duties of a trustee (Cord v. Smith, 338 P. 2d 516). It is the principle of “undivided loyalty” which underlies the attorney-client relationship and that principle may not be undermined ‘ ‘ by the disintegrating erosions of particular exceptions ’ ’ (Matter of La Grove, 31 A D 2d 928, 929, affd. 30 N Y 2d 624; Matter of Kelly, 23 N Y 2d 368; Matter of People [Bond & Mtge. Guar. Co.], 303 N. Y. 423; Meinhard v. Salmon, 249 N. Y. 458; People v. People’s Trust Co., 180 App. Div. 494; Laskey Bros, of W. Va. v. Warner Bros. Pictures, 130 F. Supp. 514, affd. 224 F. 2d 824, cert. den. 350 U. S. 932).
The application of the 1 ‘ undivided loyalty ’ ’ rule to lawyer-client relationships was described in a noteworthy opinion by Justice Lehman in Loew v. Gillespie (90 Misc. 616, 619, affd. 173 App. Div. 889): “ The relation of attorney to client is a high trust. So long as that relation continues the attorney is required to give to his client his whole-hearted service. Not only may he do nothing adverse to his client but he may accept no retainer to do anything which might be adverse to his client’s interests. These principles must be regarded as the foundation of all the rules which the courts and the leaders of the legal profession have announced as fixing the proper relations of attorneys and clients. Public policy absolutely demands that these foundations be not weakened, and the courts will not permit an attorney to profit by a retainer which involves in any degree a disregard of these principles. In my opinion, it is entirely immaterial whether or not the party whom the attorney is seeking to hold has profited himself by the attorney’s wrong or whether or not the attorney’s acts have in fact injured the original client; the essential question in each case is whether or *184 not the attorney has accepted a retainer which is in any manner in conflict with his obligation to some other client. If that appears then regardless of the form of the retainer or any other considerations the attorney can recover no judgment for any services thereafter.”
The conflicting interests to which counsel owes undivided loyalty in the instant case are those of the defendant and Gettinger. If in the expert exercise of his professional judgment, counsel succeeds for the defendant, then his client Gettinger becomes liable to a substantial lawsuit. Conversely, should counsel fail, the defendant client becomes a judgment debtor and Gettinger is free of liability. There is no consequence of his representation which does not inflict substantial injury on one or the other of his clients. The practicalities of the dual representation in this case have resulted in counsel arguing that his client Gettinger was not released by virtue of a letter from the plaintiff promising not to sue and in the unusual spectacle of defendant’s lawyer warning plaintiff’s witness to assert the Fifth Amendment. Counsel urged that Gettinge’r assert the privilege with respect to testimony relating to a performance bond on the Glen Oaks project executed by Landscaping as principal. The bond was offered in evidence by counsel after the plaintiff had offered anticipatory testimony explaining it. The significance of the exhibit to the successful defense of the action, of course, is the inference that Landscaping was directly involved in the performance of the job. If Gettinger’s activities in connection with the bond constituted a possible crime, as claimed by counsel, then the offer in evidence of the bond by counsel might tend to incriminate his client Gettinger. To have withheld it from evidence to protect Gettinger would have been adverse to the interest of counsel’s client, the defendant.
Counsel’s reliance is on the doctrine of consent, and there is no doubt that canon 6 of the old Canons of Professional Ethics appeared to create an exception to the conflict of interest rule in matters where the clients consented. The rule is sharply stiffened in the new code for it is now clear that consent is exculpatory in a multiple client case only if ‘ ‘ it is obvious that [the lawyer] can adequately represent the interest of each ” (DR 5-105, subd. [C]). The unpleasant consequences of this trial to either one or the other of counsel’s clients preclude “adequate” representation of either of them by the attorney for the other.
Under the present code, the consent exception may not be deemed viable where there is a direct clash of the conflicting *185 interests in litigation. Judicial opinion has long been antagonistic to the representation of adverse interests by the same lawyer and the consent excuse has been oft rebuffed (see Matter of Kelly, 23 N Y 2d 368, supra; Matter of Paders, 250 App. Div. 418; Matter of Gilchrist, 208 App. Div. 497; Matter of Magoon, 16 Hawaii 761; Matter of Cohn, 46 N. J. 202; Columbus Bar Assn. v. Grelle, 14 Ohio St. 2d 208). The ethics committees of the various bar associations have also limited applicability of the exception (see, e.g., ABA Informal Opinions 1199, 885, 99; Association of the Bar of the City of New York Opinions 652, 404, 378, 223; N. Y. County Lawyers’ Association Opinions 450, 308, 292,129).
Canon 9 of the code provides that a lawyer must strive to avoid not only professional impropriety but also the appearance of impropriety. No such requirement appeared in the predecessor canons and the rule thus established by the code is the first such expression ever contained in ethical canons although several earlier ABA opinions stated the concept (Wise, Legal Ethics [2d ed.], p. 125). Actually, however, the Court of Appeals gave official force to the doctrine of apparent conflict prior to the adoption of the code in Matter of Kelly (23 N Y 2d 368, supra). The Second Department recently restated the rule as follows in Edelman v. Levy (42 A D 2d 758): “ An attorney must avoid not only the fact, but even the appearance, of representing conflicting interests ”. An appearance of conflict occurs whenever conflicting interests are represented by the same lawyer. The code defines “ differing interests” as those which are ‘ ‘ conflicting, inconsistent, diverse or other interests ’ ’. While some of these differing interests may still be the subject of the consent exception, the potential litigative clash of arms reflected in interests which conflict prohibit their simultaneous representation by the same counsel. Even if the conflict is not real, however, the representation may be precluded, for a court may disqualify an attorney not only for acting improperly but also for failing to avoid the appearance of impropriety (Richardson v. Hamilton Int. Corp., 333 F. Supp. 1049, affd. 469 F. 2d 1382).
The court’s obligation to act where impropriety is apparent is fixed in canon 11 of the Canons of Judicial Ethics which imposes the duty upon it to correct unprofessional conduct. The court’s general power to act springs from the control by the courts of their own affairs and their power to compel attorneys to act equitably toward their own clients (Robinson v. Rogers, 237 N. Y. 467; see, also, Judiciary Law, § 90), but a controversy over its specific power to disqualify was resolved in Matter of *186 Erlanger (Erlanger) (20 N Y 2d 778), which held that jurisdiction to discipline attorneys is vested exclusively in the Appellate Division but disqualification in a particular matter should be sought in the court in which the action is pending (see, also, Matter of Huie, 2 A D 2d 163). Erlanger overruled the prior Second Department rule which denied that jurisdiction to disqualify existed at nisi prius (see Marco v. Sachs, 1 A D 2d 851). The court’s power to compel equitable conduct may be exercised at any time when occasion arises (Leviten v. Sandbank, 291 N. Y. 352) and such occasion arises when the court is informed that an attorney is acting for an adversary. It is then required to prevent him from continuing to act (7 C. J. S., Attorney and Client, § 47).
Here the attorneys for the plaintiff perceive no impropriety. If the court is to act it must do so on its own motion for no one has moved to disqualify counsel. Such sua sponte action is common in the Federal district courts (see, e.g., Empire Linotype School v. United States, 143 F. Supp. 627; Porter v. Huber, 68 F. Supp. 132) where it has been held that the laches of a private party or complainant should not defeat the court’s duty to disqualify an attorney when required (Empire Linotype School v. United States, supra). Since what is involved is a matter of public interest relating to the integrity of the Bar (Estates Theatres v. Columbia Pictures Ind., 345 F. Supp. 93), the courts, as well as the Bar, have a responsibility to maintain public confidence in the legal profession (Richardson v. Hamilton Int. Corp., 333 F. Supp. 1049, supra). The exercise of such responsibility cannot be deemed dependent upon the disposition of the parties or their attorneys to press an issue of impropriety by formal motion when the court itself has become aware of its existence.
This court recognizes that it has no power to make an adjudication of misconduct (Renault, Inc. v. Auto Imports, 19 A D 2d 814) and it does not pretend to do so. Nevertheless, in the totality of the circumstances revealed to the court, counsel’s' duel representation may not be permitted to continue.
The attorney for the defendant is disqualified from further participation in this action. The court will enter a separate order declaring a mistrial in order to preserve counsél’s right to appeal from the accompanying order of disqualification.