## IN THE MATTER OF GUY J. LANZA
### AN ATTORNEY AT LAW.

Argued February 19, 1974—Decided July 18, 1974.

*S. Victor DeLucia* argued the cause for the Bergen County Ethics Committee.

*Mr. David A. Pressler* argued the cause for respondent (*Messrs. Okin, Pressler and Shapiro,* attorneys).

*Mr. Martin L. Haines and Mr. Emanuel A. Honig* appeared for *amicus curiae* New Jersey State Bar Association, (*Mr. Floyd Amoresano,* of counsel).

*Mr. John M. Boyle* appeared for *amicus curiae* New Jersey Mortgage Lenders Attorneys Committee, (*Mr. William D. Hogan,* co-counsel).

*Mr. James J. Madden* filed a brief for *amicus curiae* Mortgage Lenders Attorneys Committee of Camden County, (*Field and Madden,* attorneys).

PER CURIAM. The Bergen County Ethics Committee filed a presentment with this Court against respondent, Guy J. Lanza, who has been a practicing member of the bar of this State since 1954.

The Committee specifically found that respondent's conduct violated DR 5–105. This Disciplinary Rule forbids an attorney to represent adverse interests, except under certain very carefully circumscribed conditions.[1]

---

[1] The Disciplinary Rules of the Code of Professional Responsibility became effective in New Jersey on September 13, 1971. Respondent's criticized conduct took place earlier in the year 1971 and hence was governed by the Canons of Professional Ethics then in force. Canon 6, the predecessor of DR 5–105, read as follows:

In April or May of 1971, Elizabeth F. Greene consulted respondent with respect to the sale of her residence property in Palisades Park, New Jersey. Mr. Lanza agreed to act for her. In due course a contract, apparently prepared by a broker, was signed by Mrs. Greene as seller as well as by the prospective purchasers, James and Joan Connolly. The execution and delivery of the contract took place in Mr. Lanza's office, although he seems to have played little or no part in the negotiation of its terms. By this time he had agreed with the Connollys that he would represent them, as well as Mrs. Greene, in completing the transaction. The testimony is conflicting as to whether or not Mrs. Greene had been told of this dual representation at the time she signed the contract. Mr. Lanza says that she had been told, but according to her recollection she only learned of this at a later date from Mrs. Connolly. In any event it is quite clear that respondent agreed to act for the purchasers before discussing the question of such additional representation with Mrs. Greene.

The contract as originally drawn provided for a closing date in late July, 1971. At Mrs. Greene's request this date was postponed to September 1. A short time later, circumstances having again changed, Mrs. Greene found that she would now prefer the original date. This proved satisfactory to the purchasers but Mr. Connolly told Mrs. Greene that

---

6. *Adverse Influences and Conflicting Interests*

It is the duty of a lawyer at the time of retainer to disclose to the client all the circumstances of his relations to the parties, and any interest in or connection with the controversy, which might influence the client in the selection of counsel.

It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of this canon, a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose.

The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed.

at this earlier date he would not have in hand funds sufficient to make up the full purchase price of $36,000. Of this sum he would lack $1,000. He suggested, however, that the parties might close title upon the earlier date if Mrs. Greene would accept, as part of the purchase price, a check for $1,000 postdated approximately 30 days. Mrs. Greene was personally agreeable to this. She consulted respondent who advised her that he saw no reason why she should not follow this course.

The closing accordingly took place late in July and in accordance with the foregoing arrangement, Mrs. Greene received, as part of the purchase price, Mr. Connolly's check in the sum of $1,000 dated August 31, 1971. Shortly after this latter date she deposited the check for collection and it was returned because of insufficient funds. When questioned, Mr. Connolly said that after he and his wife had taken possession of the property they discovered a serious water condition in the cellar. He added that Mrs. Greene had made an explicit representation that the cellar was at all times dry. For this reason he refused to make good the check, saying that it would cost him $1,000 to rectify the condition in the cellar. Mrs. Greene denied that she had ever made any representation whatsoever. She immediately got in touch with respondent who did nothing effective on her behalf. She then retained other counsel and has subsequently initiated legal proceedings against the Connollys.

We find respondent's conduct to have been unprofessional in two respects. In the first place, the way in which he undertook the dual representation failed to meet the standards imposed upon an attorney who elects to follow such a course. In the second place, after the latent conflict of interests of the two clients had become acute, he nevertheless continued to represent both parties. At that point, rather than going forward with the matter as he did, he should have withdrawn altogether.

Mr. Lanza first undertook to act for the seller, Mrs. Greene. This immediately placed upon him an obligation to

represent her with undivided fidelity. Despite this obligation, he later agreed, without prior consultation with Mrs. Greene, to represent Mr. and Mrs. Connolly, whose interest in the matter was of course potentially adverse to that of his client. He should not have undertaken to represent the purchasers until he had initially conferred with Mrs. Greene. He should have first explained to her all the facts and indicated in specific detail all the areas of potential conflict that foreseeably might arise. He should also have made her aware that if indeed any of these contingencies should thereafter eventuate and not prove susceptible of ready solution in a manner fair and agreeable to all concerned, it would then become his professional duty immediately to cease acting for all parties. Only after such a conference with his client, and following her informed consent, would he have been at liberty to consider representing the purchasers. They, too, were entitled to the same explanation as is set forth above, as well as being told of respondent's existing attorney-client relationship with the seller.

The second instance of misconduct arose after respondent learned that the purchasers would not be able to pay the full purchase price in cash at the time of closing title. At that point adequate representation of the seller required that her attorney first strongly insist on her behalf that cash be forthcoming. Failing this, and if the seller persisted in her wish to close upon the earlier date, her attorney should have vigorously urged the execution and delivery to her of a mortgage from the purchasers in the amount of $1,000, or of other adequate security, in order to protect her interest pending receipt of the full cash payment. We think it fair to assume that had respondent not found himself in a position of conflicting loyalties, his representation of the seller would have taken some such course. Had the purchasers persisted in their unwillingness to pay the full amount in cash at the time of closing and had they also refused to execute and deliver a mortgage or other security, respondent

should have immediately withdrawn from the matter, advising both parties to secure independent counsel of their respective choosing. At that point in time it would have clearly been impossible for any single attorney adequately and fairly to represent both sides.

This case serves to emphasize the pitfalls that await an attorney representing both buyer and seller in a real estate transaction. The Advisory Committee on Professional Ethics, in its Opinion 243, 95 *N. J. L. J.* 1145 (1972) has ruled that in all circumstances it is unethical for the same attorney to represent buyer and seller in negotiating the terms of a contract of sale. Here the respondent did not enter into these negotiations so he does not come under the ban of this rule. Canon 6 declared, however, that "[i]t is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts." DR 5–105 is at least as strict in the requirements it lays down and in subparagraph (C) carries forward the injunction quoted above by prohibiting multiple representation unless "each [party] consents to the representation after full disclosure of the facts and of the possible effect of such representation on the exercise of his [the attorney's] independent professional judgment on behalf of each."

The extent of the necessary disclosure is what is important. As Opinion 243, *supra,* makes clear, this is a question that must be conscientiously resolved by each attorney in the light of the particular facts and circumstances that a given case presents. It is utterly insufficient simply to advise a client that he, the attorney, foresees no conflict of interest and then to ask the client whether the latter will consent to the multiple representation. This is no more than an empty form of words. A client cannot foresee and cannot be expected to foresee the great variety of potential areas of disagreement that may arise in a real estate transaction of this sort. The attorney is or should be familiar with at least the more common of these and they should be stated and laid

before the client at some length and with considerable specificity. Of course all eventualities cannot be foreseen, but a great many can. Here respondent was representing Mrs. Greene, a seller of property. Generally a seller who has entered into a mutually binding contract of sale is principally interested in securing the full purchase price to which he or she is entitled. As counsel experienced in this field of practice well know, to allow a purchaser to take possession of the premises in question before the entire consideration has been received, either in the form of cash or purchase money mortgage, will often prove contrary to the seller's best interests. So it was here.

For the reasons set forth above, we deem respondent's conduct to merit censure. He is hereby reprimanded.

PASHMAN, J. (concurring). At the very foundation of our adversary system reposes the basic tenet that one attorney may not represent two clients having conflicting interests at the same legal or judicial proceeding. My colleagues in the majority have interpreted this fundamental concept as they have viewed it through the exceptional circumstances of Canon 6, the predecessor of *DR* 5–105, and *In re Kamp*, 40 *N. J.* 588, 595 (1963). In permitting representation of multiple clients, *DR* 5–105(C) partially provides:

* * * if he [the lawyer] believes that he can adequately represent the interests of each and if each consents to the representation after full disclosure of the facts and of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

However, this exception must be read in conjunction with the *Disciplinary Rules* as a whole and more particularly in light of *DR* 5–105(B) and *DR* 9–101.

*DR* 5–105(B)
  A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client *will be or*

*is likely to be adversely affected* by his representation of another client * * *. [Emphasis supplied].

and

*DR* 9–101 (entitled)
  *Avoiding Even the Appearance of Impropriety.*

The latter rule then proceeds to enumerate some specific examples of impropriety, but the canon itself is all-inclusive. *In Re Estate of Trench,* 76 *Misc.* 2d 180, 349 *N. Y. S.* 2d 265 (Sup. Ct. 1973). (Wise, *Legal Ethics* [2d ed] at 125).

*DR* 5–105(C) is presently read to mean that an attorney may represent both a buyer and seller and even a lender if he can impartially exercise his professional judgment following full disclosure to and informed consent of his clients. However, once an overt conflict arises, he is compelled to withdraw entirely from the matter. The majority has struck upon this distinction and has drawn the imperceptible line between actual and potential conflict. In practice, if a latent conflict actualizes, the attorney may not represent either party; but if a potential conflict remains such and does not rise to the level of a litigious matter, an attorney may remain as counsel to both parties.

Appearing by itself *DR* 5–105(C) reads simply. But how are we to interpret it in light of *DR* 5–105(B) and *DR* 9–101? The two latter rules clearly indicate that an attorney must refuse multiple representation when his judgment "is likely to be adversely affected" and must scrupulously avoid all "appearance of impropriety." *In re Kamp, supra* 40 *N. J.* at 595 stated that "A conflict of interest is inherent in the relationship of buyer and seller * * *" and every attorney should recognize this potential or inherent conflict.

I believe that if a conflict is perpetually lurking somewhere in the background, an attorney is likely to be swayed or adversely affected thereby, whether consciously or unconsciously. I, therefore, choose not to exempt so-called po-

tential conflicts under *DR* 5–105(C). Because of the admittedly inherent nature of a buyer-seller situation and the dangers involved, true impartiality is only an ideal and not an actuality. No matter how honest and well intentioned an attorney is, the possibility for conflict always exists. Commencing with the negotiation of contract terms to the preparation and execution of that contract to sell, and then to the closing itself which may involve breached warranties as to incompleted work or delays or failure of payment, or warranties to be effective after the closing, or innumerable other complications, the attorney is dealing with two or more conflicting interests. To believe otherwise is illusory.

Two jurisdictions have recently recognized the dangers involved in dual representation and have, consequently, rigidly restricted its further use. The New York Court of Appeals in *Kelly v. Greason,* 23 *N. Y.* 2d 368, 296 *N. Y. S.* 2d 937, 244 *N. E.* 2d 298 (1968) has said:

Thus, with rare and conditional exceptions, the lawyer may not place himself in a position where a conflicting interest may, even inadvertently, affect, or give the appearance of affecting, the obligations of the professional relationship. [296 *N. Y. S.* 2d at 943, 244 *N. E.* 2d at 460].

While still accepting the concept of full disclosure and informed consent that Court concluded:

Thus, where a lawyer represents parties whose interests conflict as to the particular subject matter, the likelihood of prejudice to one party may be so great that misconduct will be found despite disclosure and consent. [296 *N. Y. S.* 2d at 945, 244 *N. E.* 2d at 462].

Similarly the Ohio Supreme Court in *Columbus Bar Ass'n. v. Grelle,* 14 *Ohio St.* 2d 208, 237 *N. E.* 2d 298 (1968) said:

* * * The fact that such misunderstandings are likely to occur under such circumstances must lead to the conclusion that only in the clearest cases should counsel hazard to represent interests which are or may become adverse, even after disclosing his dual representation. [237 *N. E.* 2d at 300].

While neither case dealt with the factual issues here in-·volved, their admonitions should be heeded. A buyer-seller situation is not a clear-cut, mechanical situation in which the attorney can impartially act. There exists 'in every buyer-seller situation an inherent conflict of interests which even though inadvertent, may affect or give the appearance of affecting an attorney's impartiality and professional relationship. Therefore, it becomes irrelevant whether full disclosure is made and informed consent is given.

This Court has itself recognized that circumstances may exist where one attorney is forbidden to represent both sides even with full disclosure and informed consent. Where a public interest or trust is involved, dual representation is impermissible. In *In re A & B,* 44 *N. J.* 331 (1965), an attorney with full disclosure could not represent both a governmental body and a private client in a real estate transaction. Also in *In re Cohn,* 46 *N. J.* 202 (1966), it was improper for an attorney to accept a retainer from a client who was to be the chief witness in another pending matter against the client he already represented. The Court in disciplining the attorney stated that there were conflicts of interest between the clients which, eevn if explained to them in advance, would make it impossible to adequately represent both parties in their respective proceedings. In each instance the possibility or potential for injustice was great. Thus, the Court repected dual representation.

I am fully cognizant of *DR* 5-105(C), but I also recognize a higher public interest as exhibited in *Kelly v. Greason, supra; In re Estate of Trench, supra; In re A & B, supra; In re Cohn, supra; DR* 5-105(B) and *DR* 9-101. While the majority and the Advisory Committee on Professional Ethics, in its Opinion 243, 95 *N. J. L. J.* 1145 (1971) have opined that the line can be drawn at negotiation or prepara-·tion and execution of the sales contract, *i. e.,* dual representation is not available in these situations, I believe that such a limiting boundary is wholly imaginary and fails to fully

deal with the whole gamut of conflicts which runs throughout the entire spectrum of the buyer-seller and even the institutional lender situation.

It is virtually impossible for one attorney in any manner and under any circumstances to faithfully and with undivided allegiance represent both a buyer and seller. This concurrence, therefore, stands for the position of the majority and further holds that dual representation in a buyer-seller situation should be totally forbidden. The reasons for this seems to me fairly obvious. In this type of transaction, it is most certainly in the public interest to safeguard and protect both parties from any abuses, whether they be ill-advised or inadvertent. The potential conflict in home buying or selling may never come to fruition. However, when it does surface, both sides explode in anger and accusations. The attorney will then withdraw, leaving the situation no better than when it occurred and, for that matter, probably a bit worse. This is not fair to either party.

It is my contention that neither buyer nor seller can ever possibly fully appreciate all the complexities involved. That is precisely the reason why full disclosure and informed consent are illusory. What most people typically do is rely upon the representation of their attorney when he reassures them that everything will be properly handled. However, the attorney is, unfortunately, not a clairvoyant who can foresee problem areas, although he realizes that there is certainly the potential for genuine conflict. Even where his motives are of the highest, as they usually are, and in good faith believes that he can effect a meeting of the minds, he really is not sure. Because of that dangerous uncertainty, I believe attorneys would, generally, welcome this prohibition against potential conflict.

Numerous situations like the present instance require affirmative legal action and demand an attorney's undivided loyalty. If two separate attorneys were individually retained, both parties would be sure that they were receiving the best

possible legal attention.. If and when a conflict developed, they would be duly represented, instead of deserted. The inconvenience in retaining separate attorneys is minimal when weighed against the dangers involved, and the cost differential in the final analysis would be inconsequential.

While the present case dealt with the problem of full disclosure or more accurately the lack thereof, the potential for damage always existed and in fact actualized itself in the case of Mr. Lanza. Any attorney or client who is foolhardy enough to believe that a buyer-seller situation is relatively problem free, is looking for trouble. These types of situations are just not that clear. The only thing that is readily apparent is that a danger of real conflict always exists, even though it may not be imminent or impending.

In purchasing a home, the parties usually are acquiring the most costly asset in their lifetime. The public interest demands that they be faithfully represented by counsel. I would, therefore, urge that this Court not allow any exclusions for dual representation in the buyer-seller situation. It is virtually impossible for an attorney to contend for that which duty to another client requires him to oppose. This impossible fact pattern is not conducive to the fulfillment of that high degree of undivided loyalty owed by a lawyer to his client.

We should decisionally or by Canons of Ethics discourage an attorney from taking any chances in this highly-charged potential for conflict. Misconduct may be found despite disclosure and consent.

I concur in the judgment of reprimand.

*For reprimand* — Chief Justice HUGHES and Justices JACOBS, HALL, MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD—7.