IN THE MATTER OF RONALD V. ROCKOFF,
AN ATTORNEY AT LAW.

Argued November 19, 1974—Decided January 28, 1975.

*Mr. J. Albert Mastro* argued the cause for the Somerset County Ethics Committee.

*Mr. William B. Rosenberg* argued the cause for respondent.

PER CURIAM. A presentment submitted by the Somerset County Ethics Committee charges respondent with various derelictions arising from his conduct in the handling of a real estate transaction.

He was originally retained by the sellers to act for them in connection with the proposed sale of their residential property for the sum of $37,900. The prospective purchasers being unable to procure an institutional mortgage loan, the sellers agreed to take back a $27,000 purchase money mortgage as part of the consideration. At this point respondent amended the contract of sale, which had not yet been executed, by introducing the following clause:

> In consideration for grantor's providing same [purchase money mortgage], purchasers herein authorize Ronald V. Rockoff Esq. to prepare and obtain all documents necessary thereto including, but not limited to, title search, title insurance, survey, bond and mortgage documents, and any other documents necessary thereto. Cost of said items, including legal fees, to be paid by the purchasers directly to Ronald V. Rockoff, Esq.

According to respondent this was done because his clients, the sellers, asked him to "do everything necessary to protect their interests." The purchasers submitted the contract to their own attorney, who, quite understandably, objected to the clause quoted above. Following a rather acrimonious telephone conversation, the purchasers' lawyer, apparently moved to reluctant acquiescence by his clients' financing needs, agreed that respondent might do the title work as set forth in the agreement.

At the title closing a dispute arose as to the amount of respondent's fee to be paid by the purchasers. They claimed, as did their attorney, that the fee demanded exceeded the agreed sum. Again yielding to financial exigency, the purchasers paid the larger amount, took title, and immediately thereafter filed their complaint with the Ethics Committee.

Respondent seeks to justify his conduct, in inserting the foregoing provision in the contract, by claiming that he could not provide his clients full protection unless the title

were examined in the sellers' interest to insure the validity of the purchase money mortgage. The argument is specious. Any flaw in the sellers' title must have been corrected by them at their own expense. They were required by the general law of vendor and purchaser to convey a good and marketable title; this obligation was here reinforced by the provision in the contract directing that there be included in the deed a covenant against grantors' acts. A search to discover judgments or other liens outstanding against the purchasers was unnecessary due to the well-recognized rule that any such encumbrance would be held subordinate to the lien of the purchase money mortgage. It is difficult indeed to disagree with the Committee's conclusion that ". . . the intent of respondent [was] to utilize the real estate transaction as a pretext and vehicle for fee generating purposes. . . ." We consider this conduct to have been in violation of *DR* 1–102(A)(6) which forbids a lawyer to engage in conduct that adversely reflects on his fitness to practice law. Such conduct clearly tends to bring our profession into disrepute.

■ Respondent is further charged with having violated *DR* 5–105 in that he sought to represent conflicting interests without having first secured the informed, express and uncoerced consent of each. *In re Lanza*, 65 *N. J.* 347 (1974) ; *In re Kamp*, 40 *N. J.* 588 (1963). In answer to this contention, it is urged on respondent's behalf that he did not in fact act for the buyers — who were at all times represented by their own counsel — but rather that all the work he did was for the sellers-purchase money mortgagees. It is certainly true that the fact the buyers paid for much of what respondent did, would not, of itself, establish an attorney-client relationship. One person may pay an attorney for services rendered to another. *N. J. Advisory Committee on Professional Ethics, Opinion* 51, 87 *N. J. L. J.* 705 (1964) ; *Opinion* 27, 87 *N. J. L. J.* 97 (1964). We agree that the arrangement can be interpreted in the manner suggested, and we remain mindful that in a disciplinary pro-

ceeding involving an attorney a charge of unethical conduct must be sustained by clear and convincing proof. *In re Pennica,* 36 *N. J.* 401, 419 (1962). We acquit respondent with respect to this charge.

Although the total fees collected by respondent from the purchasers were high, we are not prepared, upon the meagre and somewhat confused evidence in the record, to conclude that they were clearly excessive or unconscionable. Hence we do not find respondent to have violated *DR* 2–106 as charged.

Finally, it is undisputed that respondent received and retained a refund or commission from the title company from which a policy of title insurance was purchased and that he did not make this fact known to the purchasers, who were required to pay the bill for a full premium. The rebate so received should not have been retained without disclosure and subsequent acquiescence on the part of the person to whom the bill was submitted for payment. *Cf. N. J. Advisory Committee on Professional Ethics, Opinion* 12, 86 *N. J. L. J.* 621 (1963).

 Respondent's conduct, in the respects indicated above, was clearly unethical. He is hereby reprimanded.

PASHMAN, J. (concurring). I am cognizant that respondent was acquitted with respect to the charge alleging a violation of *DR* 5–105 in that he sought to represent conflicting interests without having first secured the informed, express and uncoerced consent of both seller and buyer. *In re Lanza,* 65 *N. J.* 347 (1974) ; *In re Kamp,* 40 *N. J.* 588 (1963). This result was justified on the basis that payment by the buyer for the services respondent performed, did not establish an attorney-client relationship.

It is still virtually impossible for one attorney with undivided allegiance to represent both a buyer and seller. *In re Lanza* (concurring) at 65 *N. J.* 353–358. Dual representation should be totally forbidden.

Both parties must be safeguarded from abuses whether inadvertent or intentional. Any attorney or client who is

foolhardy enough to believe that a buyer-seller situation is relatively problem free, is looking for trouble. These types of situations are just not that clear. The only thing that is readily apparent is that a danger of real conflict always exists, even though it may not be imminent or impending.

I incorporate herein the legal authorities and observations made in my concurring opinion in *Lanza, supra.*

I concur in the judgment of reprimand.

*For reprimand*—Chief Justice HUGHES, Justices JACOBS, MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD and Judge COLLESTER—7.

*Opposed*—None.