## IN THE MATTER OF DANIEL W. KAMP, AN ATTORNEY-AT-LAW OF NEW JERSEY.

Argued September 10, 1963—Decided October 7, 1963.

*Mr. Roger W. Breslin* argued the cause on behalf of the committee.

*Mr. John D. Morrison* argued the cause for respondent.

The opinion of the court was delivered by

PROCTOR, J. On July 27, 1962 a complaint was filed with the Bergen County Ethics and Grievance Committee against the respondent attorney, Daniel W. Kamp. Following a formal hearing, the Committee filed a presentment in this court charging respondent with violation of *Canon* 6 of the *Canons of Professional Ethics.*

At the hearing, the following facts appeared without substantial dispute. On June 5, 1962 Laura M. Cronk and Staben Custom Built Homes, Inc., entered into a written agreement whereby Mrs. Cronk agreed to purchase a certain parcel of real estate and a dwelling to be built thereon by the corporation. The contract provided for a down payment of $2,000, paid by Mrs. Cronk at the time of execution of the contract, and subsequent specified progress payments as construction proceeded. The total price was $20,700. The contract further specified:

"It is understood and agreed by all parties hereto that closing of title in this transaction shall be handled through the office of Daniel W. Kamp, Esq., 36 Central Avenue, Midland Park, New Jersey."

The following day John Staben, President of Staben Custom Built Homes, Inc, mailed a copy of the contract to the respondent. This was the first notice respondent received of

the sale to Mrs. Cronk, although he had been the attorney for the corporation and Mr. Staben for five years and had conducted a prior search of this property for Staben at the time of his purchase. Respondent testified that it was his belief that by virtue of the above-quoted clause in the contract, an attorney-client relationship was created between him and Mrs. Cronk with regard to the closing of title. However, he admitted that he had no contact with her at any time and did nothing to protect her interests.

Mrs. Cronk, without legal advice, proceeded to make progress payments pursuant to the contract, i. e., $2,000 upon completion of the foundation and $8,500 when the house was framed. Thereafter Mrs. Cronk was advised by friends "to get my own lawyer," and on July 12 she consulted Richard S. Huckin, an attorney who had previously represented her on other matters. She gave him her copy of the contract and asked him to represent her in the purchase of the property.

Mr. Huckin attempted to make a title search but was apparently unable to locate the property with sufficient accuracy. On July 24, 1962 he telephoned the respondent seeking information to assist him in locating the property. When Huckin said he intended to make a search of the property for Mrs. Cronk, the respondent objected vehemently, insisting that Huckin could not do so, but would have to go through him—that he had an agreement with the builder. He refused to give Huckin any information about the property and said that since Mrs. Cronk had signed the contract, she would have to live up to it and pay him for the search. Huckin told respondent he considered such an arrangement improper and would report his actions to the ethics committee if he continued to maintain his present position. Respondent replied that this type of situation occurs frequently and that Huckin could report it if he felt so inclined. Respondent apparently believed that this contract provision was not only proper but created a binding obligation on the part of the buyer to accept his services.

Following this conversation with respondent, Huckin informed Mrs. Cronk that he could not represent her in connection with the purchase because he was unable to locate the property. Nevertheless, on August 9, 1962, Mrs. Cronk paid the remaining $8,200 to Staben and received a deed from him. Respondent did not attend the closing, which took place at Mrs. Cronk's new home, but he had prepared the deed and affidavit of title for Staben. Although the contract was executed by Staben Custom Built Homes, Inc., the grantor in the deed was John Staben, individually. No search had been made on the property for Mrs. Cronk, no title insurance was procured, and apparently to this day she has no assurance that her title to the premises is marketable.

Respondent submitted a bill dated August 8, 1962, to Staben Custom Built Homes, Inc., for certification and examination of title in the "Staben-Cronk" matter in the amount of $195 less a credit of $60. Mrs. Cronk was not billed for legal fees in connection with the conveyance.

During the course of the hearing respondent described his arrangement with Staben substantially as follows: When Staben purchased a tract, respondent would examine the title for him to determine its marketability. Staben would be billed only for out-of-pocket expenses incurred by respondent. When Staben subsequently sold the property, he would encourage the buyer to utilize the services of respondent as closing attorney with respect to the title work. If the buyer acquiesced, the contract provided that closing would be handled through the respondent, and the buyer would be billed by respondent "anywhere from $185 to $195 or $200, plus a few disbursements." The purpose of this arrangement was to permit Staben to price the property at a lower figure. When the buyer paid the respondent's fee, respondent would credit Staben for the expenses previously paid by him. In the Cronk purchase, although the contract, according to the respondent, established this arrangement, the dispute that arose interfered with the normal course of events. Mrs. Cronk was not billed (nor was any work done for her), but instead

Staben was billed as previously noted, the credit of $60 being allowed for respondent's expenses previously billed to and paid by Staben.

*Canon* 6 of the Canons of Professional Ethics provides:

"6. Adverse Influences and Conflicting Interests

It is the duty of a lawyer at the time of retainer to disclose to the client all the circumstances of his relations to the parties, and any interest in or connection with the controversy, which might influence the client in the selection of counsel.

It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of this canon, a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose.

The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed."

The respondent contends that the contract between Mrs. Cronk and Staben Custom Built Homes, Inc., created an attorney-client relationship between himself and Mrs. Cronk by which he was to represent her in the closing of title. Accepting, *arguendo,* respondent's contention, the facts clearly show a violation of *Canon* 6. At the time he received the contract, respondent was representing Staben and the corporation. Since respondent represented both buyer and seller, a conflict of interest as defined by *Canon* 6 immediately appeared. Even within the limited area of marketable title, a situation may exist which casts doubt on the advisability of accepting the title. The buyer's attorney would be under a duty to request the seller to correct the situation, whereas the seller might properly contend that the title was marketable, notwithstanding the buyer's assertion. It would certainly be most difficult for one attorney under such circumstances to represent both clients with "undivided fidelity." See Note, 79 *L. Q. Rev.* 25 (1963).

■■ The fact that no such situation appears to exist at the time of retainer does not eliminate the conflict. As said by Drinker in his work on *Legal Ethics* (1953), at *p.* 104:

"In observing the admonition of Canon 6 to avoid the representation of conflicting interests, the lawyer must have in mind not only the avoidance of a relation which will obviously and presently involve the duty to contend for one client what his duty to the other presently requires him to oppose, but also the probability or possibility that such a situation will develop."

A conflict of interest is inherent in the relationship of buyer and seller; and *Canon* 6 is applicable to every occasion in which an attorney undertakes to represent both the seller and the buyer under a sales contract.

■■ *Canon* 6 forbids the representation of conflicting interests "except by express consent of all concerned given after a full disclosure of the facts." As Justice Story stated long ago in *Williams v. Reed*, 3 *Mason* 405, 418 (*C. C. Maine*, 1824):

"An attorney is bound to disclose to his client every adverse retainer, and even every prior retainer, which may affect the discretion of the latter. No man can be supposed to be indifferent to the knowledge of facts, which work directly on his interests, or bear on the freedom of his choice of counsel. When a client employs an attorney, he has a right to presume, if the latter be silent on the point, that he has no engagements, which interfere, in any degree, with his exclusive devotion to the cause confided to him; that he has no interest, which may betray his judgment, or endanger his fidelity."

And as pointed out by the New Jersey Advisory Committee on Professional Ethics in its *Opinion No. 7*:

"[A] clandestine conflict of interests exists when an attorney employed by a seller prepares all legal instruments, certifies and closes title, without advising the purchaser fully of the relationship which exists, and that his interests might be better protected by his engagement of independent counsel." 86 *N. J. L. J.* 405 (1963).

Full disclosure requires the attorney not only to inform the prospective client of the attorney's relationship to the seller,

but also to explain in detail the pitfalls that may arise in the course of the transaction which would make it desirable that the buyer have independent counsel. The full significance of the representation of conflicting interests should be disclosed to the client so that he may make an intelligent decision before giving his consent. If the attorney cannot properly represent the buyer in all aspects of the transaction because of his relationship to the seller, full disclosure requires that he inform the buyer of the limited scope of his intended representation of the buyer's interests and point out the advantages of the buyer's retaining independent counsel. A similar situation may occur, for example, when the buyer of real estate utilizes the services of the attorney who represents a party financing the transaction. To the extent that both parties seek a marketable title, there would appear to be no conflict between their interests. Nevertheless, a possible conflict may arise concerning the terms of the financing, and therefore at the time of the retainer the attorney should make clear to the buyer the potential area of conflict. In addition, if the buyer's interests are protected only to the extent that they coincide with those of the party financing the transaction, the attorney should explain the limited scope of this protection so that the buyer may act intelligently with full knowledge of the facts.

In the present case, after respondent was "retained" by virtue of the contract, he was under a duty to communicate with Mrs. Cronk immediately and to explain to her the nature of his relationship to Staben and the corporation and to inform her of the full significance of giving her consent to his representing her. This he failed to do. This failure alone is a violation of *Canon* 6.

Moreover, not only did he fail to communicate with her at once, but he allowed her to make progress payments of $10,500 pursuant to the contract without legal advice. Although respondent urges that he was waiting to hear from Staben to advise him when payments were going to be made, he knew that payments would become due under the terms of the con-

tract, and he was under a duty to advise his purported client, Mrs. Cronk, that she should not make any payments until her interests were fully protected. Any number of encumbrances could have intervened, *e. g.,* mechanics liens, judgments, which would have impaired her interest, and which would have been uncovered by an attorney properly representing the buyer.

Respondent's failure to protect the interests of Mrs. Cronk was motivated, consciously or unconsciously, by the conflict of interests that existed. It is clear that respondent considered Staben and the corporation as his primary clients over the long range. He viewed Mrs. Cronk not as a client to whom he owed a duty of protection, but merely as a source of a fee for title work which he had already done for Staben. As far as he was concerned, his relationship with Mrs. Cronk was strictly commercial, created by contract, and not the personal relationship that should exist between attorney and client. In fact, respondent in his testimony emphasized the limited scope of his retainer, *i. e.,* to handle the title work only, much as if he had a contract for the sale of a commodity which couldn't be breached. Such an attitude places the practice of law in a commercial atmosphere which is wholly foreign to the fundamental premise upon which the *Canons of Professional Ethics* are based, *i. e.,* that the practice of law is a profession and not a business. *Cf. In re Rothman,* 12 *N. J.* 528 (1953); *In re L. R.,* 7 *N. J.* 390 (1951); *In re A. B. C.,* 7 *N. J.* 388 (1951). Such a failure to give adequate representation to one of the parties is an inherent danger in representing conflicting interests. It is this evil that *Canon* 6 was designed to prevent.

We find, as did the Ethics Committee, that respondent has violated *Canon* 6. *Cf. In re Greenberg,* 21 *N. J.* 213 (1956).

Although the presentment charged only a violation of *Canon* 6, we think the facts clearly disclose that the respondent has also violated *Canons* 27 and 35. These canons, in pertinent part, provide:

"27. Advertising, Direct or Indirect
It is unprofessional to solicit professional employment * * *
through touters * * *
"35. Intermediaries
The professional services of a lawyer should not be controlled or
exploited by any lay agency, personal or corporate, which intervenes
between client and lawyer. A lawyer's responsibilities and qualifica-
tions are individual. He should avoid all relations which direct the
performance of his duties by or in the interest of such intermediary.
A lawyer's relation to his client should be personal, and the responsi-
bility should be direct to the client. * * *"

A seller who solicits buyers to employ an attorney is tout-
ing for the attorney. *Canon* 27 prohibits an attorney from
soliciting employment through touters. The respondent has
violated this canon by his admitted arrangement with Staben,
under which Staben solicited clients for respondent who, in
reciprocation, provided free professional services for Staben.

*Canon* 35 was also violated by the arrangement between the
respondent and Staben. The respondent permitted Staben to
use him as a tool in the competitive process by offering the
buyer a lower price in return for his consent to employ re-
spondent. This commercial exploitation of the professional
services of an attorney mars the essential dignity of the pro-
fession.

██ Respondent argues that the failure to specify in the
complaint or at the hearing before the Ethics Committee the
specific canon allegedly violated deprived him of the op-
portunity to prepare his defense. As to the complaint, *Rule*
1:16–4(a) provides:

"Every complaint * * * shall state the names and addresses
of the complainant and the attorney complained against, the facts
constituting the alleged improper conduct on the part of the attorney,
and whether the same or a similar complaint has ever been made to
and considered by any ethics and grievance committee."

This rule does not require that the complaint specify the
particular canon or canons allegedly violated. However,
whenever a canon is applicable, it should be specified in the
complaint or in some formal fashion before or during the

course of the hearing. And if at any time the facts disclose that additional canons may have been violated, ordinarily the new charges should be formalized with full opportunity afforded to meet them.

 In the present case the facts in the complaint and the testimony at the hearing clearly presented the question of conflict of interests. The respondent was given full opportunity to meet that issue and to present all relevant facts and circumstances. He does not suggest that he would have introduced additional evidence at the hearing if he had been specifically advised that he was charged with a violation of *Canon* 6. No prejudice has been shown by the failure to specify this canon and we find his argument to be without merit.

We have found that respondent violated *Canons* 27 and 35, although they were not specified in the presentment. Ordinarily, fairness to an attorney suggests that he be informed of the additional canons allegedly violated and be given an opportunity to meet the charges. Accordingly, although our finding of these violations is based wholly on respondent's own testimony, we have not considered them in determining the extent of appropriate discipline. However, in view of the fact that the violations are so apparent on the face of the record, we mention them for the guidance of the bar.

 Respondent further argues that arrangements between sellers and attorneys of the type he had with Staben are prevalent not only in Bergen County but throughout the State. The fact that other lawyers may be guilty of the same offense is no defense to a violation of the canons. *In re Rothman, supra,* at *p.* 545.

 The practice shown by the facts in this case is subversive of the professional relation of attorney and client and cannot be tolerated no matter how widespread it may be. However, under the circumstances, and since this is the first case in which this practice has been brought to our attention, we do not think it appropriate to impose any penalty upon the respondent other than to reprimand him for his conduct.

This, however, is not to be taken as a measure of future discipline. The bar will, of course, be upon full notice that the practices here condemned are regarded as highly unprofessional, and any further violations which come to the attention of the court will therefore necessarily be dealt with severely. *Cf. In re A. B. C., supra; In re L. R., supra.*

*For reprimand* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and HANEMAN—6.

*Opposed*—None.