**Jules BAGDAN, in his capacity as Trustee in Bankruptcy of Southeastern Insurance Group, Plaintiff,**

**v.**

**Robert A. BECK, II, et al., Defendants.**

**Civ. A. No. 89–3389.**

United States District Court, D. New Jersey.

Sept. 19, 1991.

Theodore L. Abeles, Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, Newark, N.J.

Matthew P. Boylan, Mary Jo Reich, Lowenstein, Sandler, Kohl, Fisher & Boylan, Roseland, N.J., for defendants Lampf, Lipkind, Prupis and Petigrow.

Jeffrey A. Bronster, DeCotiis, Philips & Lundsten, Roseland, N.J.

Deborah A. Cohen, Mezey, Mezey & Cohen, Princeton, N.J.

Lynn K. Day, Coral Springs, Fla.

John G. George, Mineo, Booth & George, Fort Lauderdale, Fla.

Stephen E. Lampf, Lampf, Lipkind, Prupis, Petigrow & LaBue, pro se.

William L. Mentlik, Lerner, David, Littenberg, Krumholz & Mentlik, Westfield, N.J.

Michael R. O'Donnell, Riker Danzig Scherer Hyland & Perretti, Morristown, N.J.

Paul M. Petigrow, Lampf, Lipkind, Prupis, Petigrow & LaBue, pro se.

Robert Pershes, Pershes & Schwartz, Plantation, Fla.

Ronald M. Prupis, Fisher Island, Fla.

L. Bruce Puffer, Jr., Shanley & Fisher, Morristown, N.J., for defendants Deloitte, Haskins and Sells.

Jeffrey L. Reiner, Meyner & Landis, Newark, N.J.

Michael M. Rosenbaum, Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, Short Hills, N.J., for defendants Leonard Belleza, Harry Olstein, William Paulus, Jr. and Ernest J. Sabato.

Carl S. Shible, North Miami Beach, Fla.

Robert B. Smith, Ruden Barnett McCloskey, Miami, Fla.

Byron L. Sparber, Squire, Sanders & Sempsey, pro se.

Jules Rossi, Long Branch, N.J., Jay Starkman, Jane W. Moscowitz, Steel, Hector & Davis, Miami, Fla., for defendant Beck.

## OPINION AND ORDER

RONALD J. HEDGES, United States Magistrate Judge.

## INTRODUCTION

Defendants Leonard Belleza, William D. Lipkind, Harry Olstein, William Paulus, Jr., Neil L. Prupis and Ernest J. Sabato ("the Directors") have moved to disqualify Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross ("Sills Cummis") as counsel for plaintiff Jules Bagdan ("Bagdan"), the trustee in bankruptcy of Southeastern Insurance Group, Inc. ("SIG"). I have considered the papers submitted in support of and in opposition to this motion. There was no oral argument.

## DISCUSSION [1]

### A. *Is There a Conflict?*

■ The history of the pleadings *sub judice* will not be repeated here. Suffice it to say that, at present, the sole named plaintiff is Bagdan, who is asserting statutory and common law derivative claims against the Directors. This is consistent with the duties of a trustee to marshal assets and maximize the value of the estate. *See Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 352, 105 S.Ct. 1986, 1992–93, 85 L.Ed.2d 372 (1985). However, at the same time, Bagdan is asserting statutory and common law claims of individual investors in SIG which are not derivative in nature against the Directors. See Second, Third, Fourth, Fifth, Sixth, Seventh and Eighth Counts of Third Amended Complaint. Sills Cummis' prosecution of these claims on behalf of Bagdan and the individual investors forms the basis for this motion.[2]

The Directors contend that Sills Cummis is engaged in multiple representation of Bagdan and the individual investors in violation of RPC 1.7. That rule provides:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client unless:

(1) the lawyer reasonably believes that representation will not adversely affect the relationship with the other client; and

(2) each client consents after a full disclosure of the circumstances and consultation with the client, except that a public entity cannot consent to any such representation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after a full disclosure of the circumstances and consultation with the client, except that a public entity cannot consent to any such

---

**1.** Judge Lechner had ordered this motion to be filed by September 28, 1990. The Directors elected not to do so on the ground that the motion would have been premature. See Paragraph 4, Order filed September 26, 1990; transcript of November 5, 1990 proceedings before Judge Lechner at p. 27, 1.12 to p. 28, 1.9. Whether the motion would have been premature, and whether the motion would have been filed if Bagdan had not moved to disqualify counsel for the Directors (see transcript of June 14, 1991 proceedings before me at p. 51, 1.2 to p. 53, 1.8) is not before me.

**2.** I see no actual or apparent conflict in Sills Cummis' representation of Bagdan for the purpose of prosecuting any derivative claims of the individual investors now brought in Bagdan's name. "The derivative form of action permits an individual shareholder to bring 'suit to enforce a *corporate* cause of action against officers, directors, and third parties.'" *Kamen v. Kemper Financial Services, Inc.,* —— U.S. ——, ——, 111 S.Ct. 1711, 1716, 114 L.Ed.2d 152 (U.S. 1991) (*quoting Ross v. Bernhard*, 396 U.S. 531, 534, 90 S.Ct. 733, 736, 24 L.Ed.2d 729 (1970)).

representation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

(c) This rule shall not alter the effect of case law or ethics opinions to the effect that:

\* \* \* \* \* \*

(2) in certain cases or situations creating an appearance of impropriety rather than an actual conflict, multiple representation is not permissible, that is, in those situations in which an ordinary knowledgeable citizen acquainted with the facts would conclude that the multiple representation poses substantial risk of disservice to either the public interest or the interest of one of the clients.

The Directors contend that RPC 1.7(a) is applicable here. The Rules of Professional Conduct were derived from the Model Rules of Professional Conduct of the American Bar Association. The Comment to Model Rule 1.7 explains the distinction between RPC 1.7(a) and 1.7(b) in terms of "loyalty to a client:"

Loyalty is an essential element in the lawyer's relationship to a client. An impermissible conflict of interest may exist before representation is undertaken, in which event the representation should be declined....

As a general proposition, loyalty to a client prohibits undertaking representation directly adverse to that client without that client's consent. Paragraph (a) expresses that general rule. Thus, a lawyer ordinarily may not act as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated. On the other hand, simultaneous representation in unrelated matters of clients whose interests are only generally adverse, such as competing economic enterprises, does not re-

quire consent of the respective clients. *Paragraph (a) applies only when the representation of one client would be directly adverse to the other.*

Loyalty to a client is also impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client. Paragraph (b) addresses such situations. A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client. Consideration should be given to whether the client wishes to accommodate the other interest involved. [Comment to Model Rule 1.7, *Annotated Model Rules of Professional Conduct,* 73 (1984) (emphasis added)].

The Comment also speaks of "conflicts in litigation:"

*Paragraph (a) prohibits representation of opposing parties in litigation. Simultaneous representation of parties whose interests in litigation may conflict, such as coplaintiffs or codefendants, is governed by paragraph (b).* An impermissible conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question. [Comment to Model Rule 1.7, *supra* at 74 (emphasis added)].

RPC 1.7(b) is applicable to this motion.[3] The first question to be addressed is whether Sills Cummis is engaged in multiple rep-

---

**3.** The Comment to the Model Rule is consistent with the Report of the Supreme Court Committee on the Model Rules of Professional Conduct. 112 N.J.L.J.Supp. 6, p. 5 (July 28, 1983). The Committee did recommend, however, that the language of Model Rule 1.7(b)(2) be modified to make it "absolutely clear" that "disclosure should be full enough to allow a client to give an informed consent." 112 N.J.L.J.Supp. 6, *supra.* This recommendation was adopted by the Supreme Court. 114 N.J.L.J.Supp. 4, p. 3 (July 19, 1984).

resentation or whether, as Sills Cummis contends, the only "client" before the Court is Bagdan.

I reject the proposition that there is only one client here. First, claims of the individual investors continue to be asserted in the Third Amended Complaint. See above at page 652. Second, Sills Cummis acted on behalf of the individual investors in moving to have Judge Lechner's Order filed August 21, 1990 (which dismissed their direct claims against the Directors asserted under federal laws with prejudice and dismissed state law claims pendent thereto without prejudice to institution in state court) certified as final pursuant to Fed.Rules Civ. Proc. Rule 54(b) or certified pursuant to 28 U.S.C. § 1292(b) for the purpose of an immediate appeal. See Letter–Opinion filed April 15, 1991 at 1 n. 2. Whether there are counts of the Third Amended Complaint "active" before the Court is not dispositive. Third, and relevant to continued discovery, Sills Cummis continues to assert the attorney-client privilege between it and the individual investors. Exhibit D, Certification of Jeffrey A. Bronster filed September 4, 1991. These facts demonstrate that Sills Cummis continues to advance the interests of its clients (the individual investors) here.

Having concluded that Sills Cummis is engaged in multiple representation, I turn to the nature of that representation. The initial Complaint was filed on August 10, 1989. The seventeen named plaintiffs purported to be representatives of a class of investors in SIG on behalf of which Sills Cummis asserted both direct and derivative claims under federal and state law.

The "advice" given to these original plaintiffs by Sills Cummis consisted of the following:

This firm sent out to its clients, investor/plaintiffs in 1989, prior to the commencement of suit advice that the case would be of a dual nature, a proposed class action and a derivative suit and that the results of the derivative suit would enure to the benefit of SIG rather than to the individual investor/plaintiffs. The investors chose to commence the suit on that basis. See Exhibit C attached hereto. [Paragraph 8, Certification of Theodore L. Abeles filed May 22, 1991].

Exhibit C includes what appears to be a form letter dated July 18, 1989. This letter was signed by Norman Libman and was printed on the stationery of Insurance Consultants of America, Inc. The letter reads:

Dear

We have retained Steven S. Radin, Esq. of the law firm of Sills, Cummis et al., 33 Washington Street, Newark, New Jersey to institute a class and/or derivative action against the directors and officers of Southeastern Insurance Group, Inc. The costs for this litigation shall be a retainer fee of $50,000 plus out-of-pocket costs and expenses. The balance of the legal fees will be contingent upon the recovery and the results of the aforementioned action.

Based upon our response to date, we shall collect the retainer fee in the following manner. We are assessing each full unit holder $2,500; one-half (½) of a unit, $1,250. If someone has more than one unit, their share will be proportionate.

According to my record, your share of the fee will be $        .

Please make your check payable to Sills, Cummis, et al. I will collect all of the fees and will maintain a list of those that have contributed. In the event additional monies are necessary for reasonable cost and expenses incurred by the law firm, I will inform you accordingly.

Please mail your check to me in the enclosed envelope at your very earliest convenience. [Exhibit C, Abeles Certification].

Exhibit C also includes a letter dated July 17, 1989 signed by Steven S. Radin of Sills Cummis and addressed to Mr. Libman:

Dear Norman:

You have requested that our law firm institute a class and/or derivative action against the directors and officers of Southeastern Insurance Group, Inc. This request is a change from the prior arrangement between your group and our firm as described in my letter of June 28, 1989.

We agree to institute the class and/or derivative action upon the terms and conditions set forth below. We will seek recovery for the class regarding its investments, and we will seek, derivatively, on behalf of the class, recovery for damages to the corporation. *I want to emphasize, however, that in the event of a recovery in the derivative aspect of this action against these defendants, the amount received will flow to the corporation, thereby increasing the value of each shareholders' interest. As to the non-derivative aspect, the individuals named as plaintiffs will merely be representatives of the class who are bringing the action, and the litigation will not be limited to recovering the representatives' own direct investments in the Company. They will share proportionately with other members of the class.*

We will institute the class and/or derivative action in consideration of a retainer fee of $50,000 plus any out-of-pocket reasonable costs and expenses, which may include but not be limited to filing fees, printing costs, duplication and other miscellaneous costs. In the event experts are necessary, the group shall bear these costs.

The balance of our legal fees shall be recoverable from the amount of damages which we may be able to prove and collect against the defendants subject, of course, to the approval of the Court. In these matters either upon settlement or final resolution of the trial, our law firm shall make an application to the Court for reasonable attorneys' fees based upon the amount of work and the result. The Court hears this application and awards attorneys' fees based upon the above-mentioned criteria and other significant matters that may have been brought to the Courts' [sic] attention.

If there are any questions, please do not hesitate to contact me. [Exhibit C, Abeles Certification (emphasis added)].

The Radin letter is the only evidence of consultation between Sills Cummis and any of the original plaintiffs. There is no explanation of the distinction between the "derivative aspect" and the "non-derivative aspect" of the initial Complaint. There is no evidence that any of the original plaintiffs understood that *all* sums recovered would "enure to the benefit of SIG" (paragraph 8, Abeles Certification) only.

SIG went into bankruptcy in the Southern District of Florida on January 5, 1990. Thereafter, Bagdan applied to the United States Bankruptcy Court for an order authorizing Bagdan to retain Sills Cummis as special counsel to prosecute the action *sub judice.* Bagdan's application was intended to demonstrate to that court that Sills Cummis was a "disinterested person" for the purpose of appointment as special counsel under Section 327 of the Bankruptcy Code, 11 U.S.C. § 327. Bagdan explained his selection of Sills Cummis as follows:

The Trustee has selected as special counsel, the firm of Sills Cummis because such firm has extensive experience and knowledge in the field of securities, insurance, and complex litigation, for the purpose of advancing the claims that have been already set forth and similar claims as set forth in a certain lawsuit in the United States District Court for the District of New Jersey, captioned '*Insurance Consultants, Inc. against Southern Insurance Group, Inc., et al,* Civil Action No. 89–3389(AJL).' This suit was commenced by investors in the Debtor in connection with their investment, directly against various former employees, directors and consultants to the Debtor, and secondly, a derivative claim on behalf of Southeastern Insurance Group, Inc. for wrongful acts done by said persons in the period, particularly from 1986 up until the date of the institution of this case. As such, Sills Cummis has become substantially informed as to the background and justification of such litigation. The case is in its early stages, responsive to motions to dismiss and the like. *The Trustee believes that the services of Sills Cummis will assist substantially in creating potential assets of the estate under the causes of action which previously would have been denominated as derivative in nature and*

*now will be brought by the Sills Cummis firm on behalf of the estate thru and at the sole direction of the Trustee.* [Paragraph 5, Application, attached as Exhibit D to Abeles Certification (emphasis added)].

Mr. Abeles, on behalf of Sills Cummis, described the firm's role for the Bankruptcy Court:

Neither I, my law firm, any member of the firm or associate thereof, insofar as I have been able to ascertain, has had or presently has any connection with Southeastern Insurance Group, Inc., the above-mentioned Debtor (the "Debtor"), its creditors, or any other parties in interest in the above-captioned case, except as set forth in paragraph three hereof, and except that I, my law firm, its members, and associates (i) may have appeared in the past, may appear in the future, in cases where one or more of said parties may be involved, and (ii) may represent or may have represented certain of the Debtor's creditors in matters unrelated to this case.

Sills Cummis on behalf of stock and debenture investors in Southeastern Insurance Group, Inc. has brought a direct suit in the United States District Court for the District of New Jersey against various persons who were employees, directors, officers and/or consultants of the Debtor in connection with a 1986 Private Placement, and, as well, derivative claims, on behalf of Southeastern Insurance Group, Inc., particularly in connection with various acts adverse to the interest of Southeastern Insurance Group, Inc. at and after the time of the private placement to the time of its being declared bankrupt under Chapter 7. Both claims are the subject of a single action in the United States District Court for the District of New Jersey, Civil Action Number 89–3389–AJL. A copy of the Complaint therein has been reviewed by the Trustee, Jules Bagdan. In connection with that suit, separate causes of action are presented which are clear and definite, directed to differing claims and therefore, different parties to receive the benefits of any judgment. *As investors in the Debtor, holders of debentures and stock would have claims against the bankrupt estate just as any other creditor and would be expected to file proofs of claim in the bankrupt estate. Their principal purposes in the existing litigation are to create funds for the payment of their direct claims and also to obtain, on behalf of Southeastern Insurance Group, a recovery on the non-investment claims as such.* The claims on behalf of Southeastern Insurance Inc. include breaches of fiduciary duty by insiders and consultants owed to the Debtor, including diversion of funds and other unlawful acts. In order to avoid any questions as to services being provided in connection with one act or cause of action as against another, Sills Cummis will keep several records of time and disbursements allocable to each cause of action henceforth. Since this was not necessary until this time, Sills Cummis proposes to have an equal allocation of its previous time and disbursements between the two causes of action. [Paragraphs 2 and 3, Affidavit of Theodore L. Abeles, attached as Exhibit D to Abeles Certification (emphasis added)].

Bagdan's application was approved by the Bankruptcy Court on June 11, 1990.[4]

A Second Amended Complaint was filed on June 26, 1990. This increased the number of individual investor plaintiffs to twenty-nine. Sixteen of these had been named in the initial Complaint. The Second Amended Complaint was the subject of

---

**4.** Section 327(c) of the Bankruptcy Code, 11 U.S.C. § 327(c), provides that a special counsel may be employed by a trustee "unless there is an objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest." The appointment of Sills Cummis as special counsel is, of course, within the sole discretion of the Bankruptcy Court in Florida.

I decline to comment on whether Bagdan has a conflict. What is at issue here is an ethical rule "aimed at preventing the *lawyer* from having to wear two possibly conflicting hats." *In re Freedom Solar Center, Inc.,* 776 F.2d 14, 18 (Bankr. 1st Cir.1985).

Judge Lechner's August 21, 1990 Order referred to above at page 654.

The Third Amended Complaint was filed on September 14, 1990. The only named plaintiff was Bagdan. However, this pleading continued to assert both direct and derivative claims on behalf of the twenty-nine individual investors named in the Second Amended Complaint.

The history of Sills Cummis' representation reveals several facts relevant to the pending motion. First, this civil action will be prosecuted "at the sole direction of the trustee." Second, one purpose of this litigation is to "create funds for the payment of their [the individual investors] direct claims." Third, Sills Cummis made no disclosure to the individual investors named in the Third Amended Complaint of Bagdan's role.

I am satisfied that Sills Cummis cannot act *at the sole discretion of the trustee* to maximize the value of SIG's estate and, at the same time, act to diminish the value of that estate by securing a recovery for the individual investors without creating a potential for conflict. It is at least possible, if not probable, that Sills Cummis will be forced at some point to favor Bagdan's interests over those of the individual investors (or vice versa) especially when Bagdan perceives himself to be in control of the litigation or is, in fact, in control. Plainly, the vigor of Sills Cummis' "representation of one client may be diminished in an effort to avoid antagonizing the other client." Comment to Model Rule 1.7, *supra* at 77.[5]

The Directors appear to argue that actual conflicts have arisen. They rely on a "limited" waiver by Bagdan of the attorney-client privilege such that Sills Cummis, wearing the "hat" of counsel for the individual investors, could review documents generated by SIG's former attorneys and shielded from discovery by the attorney-client privilege. This limited waiver, argues the Directors, worked to Bagdan's disadvantage since the limited waiver destroyed the privilege. Brief in Support of Motion at pp. 15–18, 20–21.

However, the privilege may be protected by the "common interest" doctrine. *See In re SCI Subpoena No. 5441,* 226 N.J.Super. 461, 466–67, 544 A.2d 893 (App.Div.), *certif. denied,* 113 N.J. 382, 550 A.2d 484 (1988). It appears from the record to date that a common interest exists between Bagdan and the individual investors. Accordingly, and since the privilege question is not before me, I cannot conclude that any privilege has been waived.[6]

The Directors also point to the failure of Sills Cummis to petition for a writ of mandamus on the dismissal of the individual investors' claims and its failure to commence an action in state court on pendent claims. Brief in Support of Motion at 17–18. I cannot conclude that a decision not to seek the extraordinary remedy of mandamus demonstrates an actual conflict. Likewise, at least absent limitations concerns, delay in the institution of a state court action cannot represent an actual conflict unless I were to accept the Directors' unsubstantiated allegations that they will be unable to satisfy a later-secured judgment. Brief in Support of Motion at 2, 9–10. I decline to accept those allegations.[7]

Sills Cummis relies on "findings" by Judge Lechner in his Letter–Opinion filed

---

5. The parties devoted great attention to decisions on multiple representation both within and without bankruptcy proceedings. *See, e.g., Kauffman v. Dreyfus Fund, Inc.,* 434 F.2d 727 (3d Cir.1970); *Kamerman v. Steinberg,* 113 F.R.D. 511 (S.D.N.Y.1986), *aff'd,* 891 F.2d 424 (2d Cir.1989); *Messing v. FDI, Inc.,* 439 F.Supp. 776 (D.N.J.1977). These decisions are clearly illuminating on multiple representation. However, none are on all fours with the facts here.

6. I should note a concern that Bagdan, by advancing the interest of a small number of investors, may be favoring them over other creditors.

7. The Directors cite to *In re Kendavis Industries International, Inc.,* 91 B.R. 742 (Bankr.N.D.Tex. 1988), which holds that an actual, rather than a potential, conflict arises "whenever counsel for a debtor corporation has any agreement ... with a shareholder ... to protect the interest of that party...." 91 B.R. at 754; *see In re BH & P, Inc.,* 119 B.R. 35, 43 (D.N.J.1990) ("the 'actuality' of the conflict ... was the possibility that the parties would favor one estate over the other in their attempt to serve all of them"). I am not satisfied, however, that the conflict here is an "actual" one.

April 15, 1991, to demonstrate that there is no conflict. Plaintiff's Brief in Opposition at pp. 4–5. Judge Lechner, however, did no more than explain why entry of final judgment on the dismissed claims of the individual investors pursuant to Rule 54(b) would be inappropriate. Moreover, Judge Lechner only "assumed that he [Bagdan] will be sensitive to the concerns of the Investor–Plaintiffs as to the dismissed claims." Letter–Opinion at 31–32. Judge Lechner had no reason to—and did not—address the question of multiple representation.[8]

### B. *Was There Consent?*

RPC 1.7(b) permits a lawyer to represent a client if that representation "may be materially limited by the lawyer's responsibilities to another client" only if the client "consents after a full disclosure of the circumstances and consultation with the client." If there is multiple representation, as here, "the consultation shall include explanation of the implications of the common representation and the advantages and risks involved." RPC 1.7(b)(2). "When more than one client is involved, the question of conflict must be resolved as to each client." Comment to Model Rule 1.7, *supra* at 74.

In *Bellezza v. Deloitte & Touche*, No. A–2232–90T1F (App.Div. July 24, 1991), the Appellate Division of the Superior Court of New Jersey affirmed the disqualification of Budd, Larner, Gross, Rosenbaum, Greenberg & Sade ("Budd Larner"). Budd Larner had instituted suit on behalf of a number of SIG shareholders against SIG's independent accountant. Most of the plaintiffs were mere shareholders. However, three of the plaintiffs (three of the Directors *sub judice*) were both shareholders and former directors of SIG. Opinion at 3–4. The basis for disqualification was the potential conflict arising from the directors' defense of the action *sub judice* against shareholder claims and from possible cross-claims which the mere shareholders could assert against the directors. Opinion at 5–6.

Having concluded that a potential conflict existed, the court in *Bellezza* considered RPC 1.7(b)(2):

In view of the potential conflict, Budd Larner can justify its multiple representation of the shareholder and director plaintiffs only on the grounds that they have obtained the consent of the shareholder plaintiffs to the multiple representation 'after a full disclosure of the circumstances and consultation with the client, . . . .' RPC 1.7(b)(2). However, 'where dual representation is sought to be justified on the basis of the parties' consents, this Court will not tolerate consents which are less than knowing, intelligent and voluntary.' *In re Dolan*, 76 *N.J.* 1, 13 [384 *A.*2d 1076] (1978). Needless to say, in the fact of such a mandate from the Supreme Court, we are not free to assume that a plaintiff shareholder who has not evidenced his/her consent at all can be assumed to have done so simply because the plaintiff was named in the caption of Budd Larner's complaint. [Opinion at 6–7].

The court also addressed the obligation to consult with a client with regard to "the implications of the common representation and the advantages and risks involved:"

It was well established prior to the adoption of RPC 1.7 that in order to obtain a client's informed consent to joint representation, an attorney was obligated to disclose all the facts to the client and explain all of the areas of potential conflict which might foreseeably arise. *In re Lanza*, 65 *N.J.* 347, 351 [322 *A.*2d 445] (1974). Indeed, the case law suggests that even independent and separate consultation for undertaking dual represen-

---

8. The Directors contend that Sills Cummis "switched sides" by "abandoning" the individual investors' claim in favor of pursuing Bagdan's. Brief in Support of Motion at 23–24. What this contention leads to is unclear since conflicts among current clients are addressed under RPC 1.7. *See In re Freedom Solar Center, Inc.*, 776 F.2d 14, 16 (Bankr. 1st Cir.1985). In any event, I am unpersuaded that, at least for the present, Sills Cummis has abandoned anyone in fact. My decision on the motion *sub judice* is premised on the probability or possibility that Sills Cummis will be forced at some point to favor one client's interests over the others.

tation may be required. Otherwise, an attorney client fulfill his obligation to

> explain in detail the pitfalls that may arise in the course of the [litigation] which would make it desirable that the [shareholder plaintiff] have independent counsel. The full significance of the representation of conflicting interests should be disclosed to the client so that he may make an intelligent decision before giving his consent.

*In re Kamp*, 40 *N.J.* 588, 596 [194 *A.*2d 236] (1963) [Opinion at 11].

After a review of certifications of both shareholders and Budd Larner's Michael A. Rosenbaum, the court concluded that consent within the meaning of RPC 1.7(b)(2) had not been given.

■ Here, the record is devoid of any evidence of consultation by Sills Cummis with the individual investors on or after the filing of the Third Amended Complaint. It is also devoid of any consent, knowing or otherwise, by any individual investor. Since I will not assume that consent has been given, it follows that Sills Cummis has failed to comply with RPC 1.7(b)(2).

■ I am also unable to determine from the record whether Bagdan gave his informed consent to multiple representation by Sills Cummis or whether there was independent consultation. Bagdan's application to the Bankruptcy Court for leave to retain Sills Cummis as special counsel (see above at pp. 654–655) is insufficient to permit the searching inquiry mandated by *Bellezza.*

■ The next question is whether disqualification is warranted. This was also addressed in *Bellezza:*

> Furthermore, we are concerned that, as Budd Larner obtains additional confidential information during the course of defending the counterclaim on behalf of the plaintiff directors, the firm's obligation to retain the confidences communicated by the plaintiff directors will be at cross-purpose with their obligation to represent the shareholder plaintiffs with undivided loyalty.

A lawyer must avoid not only a relationship with a client 'which will obviously and presently involve the duty to contend for one client what his duty to the other presently requires to oppose, but also the probability or *possibility* that such a situation will develop.' *In re Kamp, supra,* 40 *N.J.* at 595 [194 *A.*2d 236] (quoting from Drinker, Legal Ethics (1953) at 104), (emphasis added). It is difficult to predict at the beginning of a case, especially one as complex as this, whether co-plaintiffs with potential claims against each other will wish to assert those claims once the underlying facts have been fully developed. Should such an event occur at that stage, 'the attorney who undertakes to act for several plaintiffs must retire from all representations with consequent delay, interruption of proceedings and expense.' Advisory Committee on Professional Ethics, opinion 188, (1970). Even though Budd Larner claims to have received the clear consent of all plaintiffs, Mr. Rosenbaum in colloquy with the Law Division Judge conceded the possibility that one or more of the plaintiffs may ultimately change their mind and decide to sue the director plaintiffs.

\* \* \* \* \* \*

The answer to the problem posed by the court and not answered by counsel is, as pointed out above, quite clear. Once Budd Larner has obtained the confidences of both sides, and a conflict develops between them, Budd Larner is not free to represent either side from that point on. We accept Budd Larner's representation that thousands of hours and dollars have gone into their research and preparation for the current litigation against Deloitte. We also accept their argument that it would be unfair to their director plaintiff clients not to allow them to proceed in this litigation. It is just for that reason that we think it much wiser to disqualify Budd Larner at this juncture from representing the shareholder plaintiffs than it is to disqualify them at a later time from representing all plaintiffs.

We therefore hold that Budd Larner must be disqualified from representing the shareholder plaintiffs in this litigation. They are not disqualified from continuing the representation of the shareholder directors since their only contact with the shareholder plaintiffs was the rather brief encounter with them at the August, 1989 meeting. No independent consultation has been undertaken and no confidence exchanged. [Opinion at 12–14].

Here, Sills Cummis began its representation of at least some of the individual investors prior to the filing of the initial Complaint in August of 1989. Sills Cummis litigated on their behalf before the bankruptcy of SIG and the appearance of Bagdan as a litigant. Therefore, I assume that Sills Cummis has obtained confidential information from the individual investors, as it has obtained confidential information from Bagdan. Given the potential conflict, the possession of confidences of both Bagdan and the individual investors, and the failure to make *timely* disclosure and secure informed consent, Sills Cummis must be disqualified from representing either.

## CONCLUSION

For the reasons set forth above, the motion to disqualify Sills Cummis is granted.[9]

SO ORDERED.

---

9. The Directors contend that Sills Cummis cannot meet the reasonable belief standard of RPC 1.7(b)(1). This standard has subjective and objective components: "A lawyer cannot believe that he can adequately represent multiple clients without making a judgment in accord with an objective standard, viz, what a reasonably prudent lawyer would believe under the circumstances." Report of the Supreme Court Committee on Model Rules of Professional Conduct, 112 N.J.L.J.Supp. 4, pp. 5–6 (July 28, 1983). So defined, and given the unique circumstances here, I am of the opinion that Sills Cummis cannot meet the standard of RPC 1.7(b)(2) since a recovery for either Bagdan or the individual investors will adversely affect the interests of the other.

The Directors also contend that Sills Cummis' conduct gives rise to an "appearance of impropriety" prohibited by RPC 1.7(c)(2). I have discussed this rule in my Opinion and Order on Bagdan's motion to disqualify the Directors' counsel and will not repeat that discussion here. My ruling compels the conclusion that an appearance of impropriety exists.