## In re Richard A. DILORETO, Debtor.

**Neil D. Levin, Superintendent of Insurance of the State of New York, and his successors in office as Superintendent of insurance of the State of New York, a liquidator of Nassau Insurance Company, Plaintiff,**

v.

**Richard A. DiLoreto, Defendant.**

**Bankruptcy No. 98–34641F.
Adversary No. 99–0206.**

United States Bankruptcy Court, E.D. Pennsylvania.

Aug. 1, 2000.

J. Gregory Miller, Pepper Hamilton Scheetz, Philadelphia, PA, for Debtor.

Paul Brinton Maschmeyer, Andrew Henry, Philadelphia, PA, for trustee.

Gloria Satriale, Chester Springs, PA, trustee.

## MEMORANDUM

BRUCE I. FOX, Chief Judge.

Two unsecured creditors of Mr. Richard DiLoreto—Sills Cummis Radin Tischman Epstein & Gross, P.C. and Donovan & Associates, P.C.—have filed a joint motion seeking to intervene in the above-cap-

tioned adversary proceeding. They also request that debtor's counsel be disqualified as counsel for defendant The debtor opposes both aspects of this joint motion.

For the following reasons, the motion shall be denied.

### I.

The debtor filed a voluntary petition in bankruptcy under chapter 7. In accordance with Fed.R.Bankr.P. 4004(a) and 4007(c), creditors were notified that anyone who desired to file a complaint seeking that the debtor be denied a bankruptcy discharge or seeking a determination that a debt is non-dischargeable under section 523(c) must do so "no later than 60 days after the first date set for the meeting of creditors...." That deadline in this case was set at March 15, 1999. (See docket entry # 9.)

The Superintendent of Insurance of the State of New York timely filed a complicated five count complaint. Two counts seek determinations of non-dischargeability under section 523(c), while three counts seek a denial of discharge under section 727(a). Conversely, neither of these two movants filed complaints, although both did file proofs of claim. Now both creditors seek to intervene as party plaintiffs in the adversary proceeding initiated by the Superintendent, even though the bar date has long expired by which they could obtain similar relief were they to commence their own litigation.

The movants in this dispute have not filed any pleading styled as a "motion;" rather, they filed a "notice of motion ..." with a supporting memorandum. The latter document suggests that the creditors seek to intervene only as to the portion of the complaint which seeks to deny the debtor a bankruptcy discharge. See Movants' Memorandum, at 6, 7, and 8. They further argue that the plaintiff may not

adequately represent their interests in this litigation:

> To the extent that the Plaintiff is unable or unwilling to pursue causes of action under section 727, the Plaintiff may choose to pursue actions under section 523, which could detrimentally affect the rights of all creditors.

Movants' Memorandum, at 8.

In other words, if the Superintendent succeeds in his objection to the debtor's discharge, all creditors benefit because no debt is discharged. If, however, the Superintendent succeeds in a obtaining a determination that his claims against the debtor are non-dischargeable, then only the Superintendent obtains the benefit of such a ruling. *See In re Chalasani*, 92 F.3d 1300, 1309 (2d Cir.1996) ("While § 523 simply bars discharge of specific debts incurred through fraud, § 727 is a blanket prohibition of a debtor's discharge, thereby protecting the debts owed to all creditors"). The instant request to intervene seeks to insure that the Superintendent will not ignore his objection to discharge claims in favor of his non-dischargeability claims by adding two plaintiffs whose only interest will be in prosecuting the section 727(a) claims.

## II.

■ In support of their position, these creditors discuss the basic principles of intervention found in Fed.R.Civ.P. 24, as incorporated in bankruptcy adversary proceedings by Fed.R.Bankr.P. 7024. First, they argue in favor of intervention as a matter of right; alternatively, they contend that discretionary intervention is appropriate. In so doing, they overlook other procedural rules which render their intervention request unpersuasive.[1]

■ First, as the debtor fairly notes, Rule 4004(a) sets a deadline for creditors who object to a debtor's discharge to file a complaint seeking such relief. This deadline, as with other bankruptcy deadlines, is strictly enforced. *Accord In re Chalasani*, 92 F.3d at 1310 ("This deadline is an inflexible and mandatory rule, one not subject to a court's discretion"); *In re Parker*, 186 B.R. 208, 210 (Bankr.E.D.Va.1995); *In Re Canganelli,* 132 B.R. 369, 383 (Bankr. N.D.Ind.1991); *see also Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) (enforcing the deadline found in Rule 4003 concerning objection to exemptions).

■ Thus, if a creditor files a complaint which seeks a determination of non-dischargeability under 523(c), he will not be permitted to amend the complaint to add a claim under section 727(a) objecting to discharge, if leave to amend is first sought after the deadline for filing such complaints. *See, e.g., First Nat. Bank in Okeene v. Barnes*, 956 F.2d 277 (Table), 1992 WL 33251 (10th Cir.1992); *In re Atteberry*, 194 B.R. 521 (D.Kan.1996); *In Re Canganelli*, 132 B.R. at 383. The two types of relief are quite distinct; the grant of such an amendment could violate the bar date fixed in Rule 4004(a).

Given the need to enforce the deadlines at issue here, I am aware of no reported decision supporting the right of one creditor to intervene in an adversary proceeding of another creditor based upon section 727(a) when the request to intervene is made after the bar date for commencing

---

**1.** Not only did these two creditors fail to file a motion itself but they also failed to attach the pleading they would file were they granted leave to intervene. *See* Fed.R.Civ.P. 24(c). Both of these defects could be viewed either as non-prejudicial or ones that may be remedied by amendment. I shall not address them, however, as there are more fundamental problems with this motion.

such litigation. There is, however, at least one reported decision denying the relief sought here as violative of the Rule 4004(a) deadline. *Accord In re Zyndorf,* 44 B.R. 77 (Bankr.N.D.Ohio 1984); *see also In re Low,* 8 B.R. 716, 719 (Bankr.D.R.I.1981) (refusing to allow intervention beyond the non-dischargeability bar date).

If one utilizes a traditional Rule 24 analysis, intervention of these creditors as party plaintiffs is untimely. *See In re Krause,* 114 B.R. 582, 604–05 (Bankr. N.D.Ind.1988). Intervention is also unwarranted because the provisions of Fed. R.Bankr.P. 7041 adequately protect the putative intervenors' interests.

■ Both mandatory and discretionary intervention are appropriate when the legitimate interests of the would-be intervenor are not adequately protected by the existing parties. *See Brody By and Through Sugzdinis v. Spang,* 957 F.2d 1108, 1115 (3d Cir.1992); *Harris v. Pernsley,* 820 F.2d 592 (3d Cir.), *cert. denied sub nom. Castille v. Harris,* 484 U.S. 947, 108 S.Ct. 336, 98 L.Ed.2d 363 (1987). The movants here do not suggest that the Superintendent of Insurance does not have the interest, resources or assistance of counsel needed to adequately prosecute his objections to the debtor's discharge. His claims far exceed the amounts claimed owed to these two movants. His counsel has been litigating with the debtor for many years in state court and has taken extensive discovery regarding Mr. DiLoreto's financial affairs. Furthermore, the plaintiff is a governmental official acting in a fiduciary capacity on behalf of a defunct insurance company.[2]

■ In other words, the plaintiff would appear to be the ideal candidate to prosecute an objection to discharge claim which may benefit all creditors.[3] Yet, these two creditors believe intervention is needed to insure that the Superintendent does not later decide to ignore the section 727(a) relief in favor of his section 523(c) claims. Not only is there no factual basis to support this fear but Rule 7041 is intended to protect against it.

Bankruptcy Rule 7041 incorporates the provisions of Fed.R.Civ.P. 41 with one important exception. While Rule 41 permits a complaint to be withdrawn with the consent of all parties without obtaining court approval, Rule 7041 requires court approval to dismiss or withdraw an action under 727(a):

> Rule 41 F.R.Civ.P. applies in adversary proceedings, except that a complaint objecting to the debtor's discharge shall not be dismissed at the plaintiff's instance without notice to the trustee, the United States trustee, and such other persons as the court may direct, and only on order of the court containing terms and conditions which the court deems proper.

The Advisory Committee Note explains the purpose for this exception involving § 727(a) litigation:

---

**2.** Indeed, in some instances, a governmental entity may be presumed to adequately represent the interests of would-be interveners. Coquillette, 6 *Moore's Federal Practice,* ¶ 24.03[4][iv] (3d ed.1999).

**3.** In general, inadequate representation may be present if it is shown that the interests of the existing party are adverse to, or different from, those of the applicant for intervention, *e.g., Thurman v. F.D.I.C.,* 889 F.2d 1441 (5th Cir.1989), or if it is shown that there is collusion between the existing representative party and an opposing party, *Hoots v. Pennsylvania,* 672 F.2d 1133 (3d Cir.1982), or by the existing representative party's nonfeasance in the duty of representation. Coquillette, 6 *Moore's Federal Practice,* ¶ 24.03[4] (3d ed.1999). The movants do not suggest that any of these examples are presently applicable.

Dismissal of a complaint objecting to a discharge raises special concerns because the plaintiff may have been induced to dismiss by an advantage given or promised by the debtor or someone acting in his interest. Some courts by local rule or order have required the debtor and his attorney or the plaintiff to file an affidavit that nothing has been promised to the plaintiff in consideration of the withdrawal of the objection. By specifically authorizing the court to impose conditions in the order of dismissal this rule permits the continuation of this salutary practice.

Therefore, if a plaintiff seeks to discontinue the prosecution of an objection to discharge, he must obtain court approval to do so. Some courts have not granted approval, especially if inadequate notice of the proposed settlement was given. *See In re Grosse,* 1997 WL 668059 (Bankr. E.D.Pa.1997); *In re Drenckhahn,* 77 B.R. 697, 700–01 (Bankr.D.Minn.1987); *In re Moore,* 50 B.R. 661 (Bankr.E.D.Tenn. 1985). Other courts, when faced with such a request, will permit the plaintiff's withdrawal but only after notice is given to all creditors with an opportunity for their substitution as plaintiff. *See, e.g., In re Bilzerian,* 1995 WL 934184 (M.D.Fla. 1995); *In re Joseph,* 121 B.R. 679, 683 (Bankr.N.D.N.Y.1990) (although the creditor's request to intervene in an adversary proceeding objecting to the debtor's discharge would be denied as filed beyond the bar date set in Rule 4004(a), the creditor would be substituted as the party plaintiff under Rule 7025 when the original plaintiff sought to "abandon" the litigation); *see also In re de Armond,* 240 B.R. 51 (Bankr. C.D.Cal.1999) (creditor would be allowed to settle § 727(a) litigation only if the settlement proceeds were payable to the trustee and distributed to all creditors).

Were the Superintendent to request leave to discontinue his claims under section 727(a), I can insure that the rights of other creditors are protected by virtue of Rule 7041. Among the possible courses I could then choose would be to allow another creditor—such as one or both of the movants here—to be substituted as the plaintiff. Therefore, the movants' present speculation that the plaintiff could conceivably abdicate his responsibilities to creditors in the future does not demonstrate the inadequacy of his representation nor justify their intervention under Rule 7024.

Finally, I have recently issued a pretrial order in this proceeding which may render the movants' concerns even more unfounded. For reasons discussed in the memorandum accompanying that order, I will soon hold a hearing to determine whether this adversary proceeding should be bifurcated and the objection to discharge be tried first. If the bifurcated trial results in a denial of discharge, the non-dischargeability claims become moot. *See, e.g., In re Maltais,* 202 B.R. 807, 808 n. 1 (Bankr. D.Mass.1996); *In re DeBruin,* 144 B.R. 90, 94 n. 2 (Bankr.E.D.Wis.1992); *In re Cook,* 126 B.R. 261, 269–70 (Bankr.E.D.Tex. 1991). Thus, a bifurcation order would insure the Superintendent's prosecution of his claims under section 727(a).

Accordingly, the premise of this intervention request—that the plaintiff might prosecute only the section 523(c) claims—is unpersuasive for these various reasons. Even if invention by additional party plaintiffs would not violate the deadline fixed by Rule 4004(a), it is inappropriate under these circumstances.

### III.

■ The second request posed by these movants is that the defendant's counsel be disqualified due to a conflict of interest. These creditors assert—and it is not dis-

puted—that counsel holds an unsecured claim which would be enforceable after bankruptcy if the debtor were denied a discharge. Accordingly, counsel's financial interests conflict with those of its client in the present adversary proceeding.

I will assume *arguendo* that these two creditors have standing to raise this issue, even though they are not parties to the litigation and even though their interests are not affected by the alleged conflict of interest. *But see In re PGH Intern., Inc.,* 222 B.R. 401, 406 (Bankr.D.Conn.1998) ("even if [Connecticut Rule of Professional Conduct] 1.7(b) were offended, the Plaintiffs would have no standing to seek disqualification. At its heart, this is an issue of potential conflict between the Defendant and its counsel; it produces no economic or tactical disadvantage for the Plaintiffs"). I note that the debtor/defendant has not complained and it is his interest which is adverse to that of his attorneys. The movants assert, nonetheless, that anyone has standing to raise a conflict question with the court so as to preserve the integrity of the civil litigation system. *See generally In re Fischer,* 202 B.R. 341, 352 (E.D.N.Y. 1996) ("both opposing counsel and the court have independent obligations to examine a possible attorney-client conflict").[4]

If I assume that these creditors are appropriate parties to raise this issue (or

that I should consider it *sua sponte* ), then the conflict they note is one accepted by the bankruptcy statute itself. As such, the disposition of the issue should be governed by the state Rules of Professional Conduct which govern all attorneys.

▮ Unlike chapter 11 cases where the debtor in possession is a fiduciary and its counsel must be "disinterested" within the meaning of section 101(14), in chapter 7 cases the attorney representing the debtor need not be "disinterested." *Accord, e.g., In re Pro-Snax Distributors, Inc.,* 212 B.R. 834 (N.D.Tex.1997); *Matter of Leitner,* 221 B.R. 502, 504 (Bankr.D.Neb.1998); *In re Hoffman,* 53 B.R.564 (Bankr. W.D.Ark.1985). Section 327(a) applies the "disinterestedness" requirement to professionals engaged by a bankruptcy trustee. By virtue of section 1107(a), a chapter 11 debtor in possession is treated as a bankruptcy trustee. *See In re First Jersey Securities, Inc.,* 180 F.3d 504, 508 (3rd Cir.1999); the chapter 7 debtor is not.

▮ An attorney (or other bankruptcy professional) is not disinterested if he or she holds a prepetition claim against the debtor. *See, e.g., U.S. Trustee v. Price Waterhouse,* 19 F.3d 138, 141 (3d Cir. 1994). Therefore, an attorney who holds such a claim cannot represent the chapter 11 debtor in possession. *See In re First*

---

4. The Comment to Pennsylvania Rule of Professional Conduct 1.7 supports the notion that a party may, in limited instances, raise the issue of conflict between an opposing party and the attorney representing that other party:

Resolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation. In litigation, a court may raise the question when there is reason to infer that the lawyer has neglected the responsibility. In a criminal case, inquiry by the court is generally required when a lawyer represents multiple defendants. Where the conflict is such as

clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question. Such an objection should be viewed with caution, however, for it can be misused as a technique of harassment.

Whether the present dispute "clearly" implicates the administration of justice is doubtful, given the provisions of bankruptcy law to be discussed. Also, the objectors here are not parties to this proceeding. Finally, the Comment notes that objections such as this must be "viewed with caution," as they be made as part of a litigation strategy rather than in the interests of justice.

*Jersey Securities, Inc.* Such a limitation does not exist in chapter 7 cases. An attorney who holds a prepetition claim may represent the chapter 7 debtor if the debtor chooses to engage him. The Bankruptcy Code does not preclude it. *See In re Leitner,* 221 B.R. at 504.

Since the debtor's intention in filing a chapter 7 case is to obtain a discharge, it follows that in every chapter 7 case where debtor's counsel is not disinterested, the conflict which the movants here perceive may exist. Any prepetition obligation a debtor has to his counsel may be discharged. *See In re Toms,* 229 B.R. 646 (Bankr.E.D.Pa.1999).[5] The existence of litigation challenging the debtor's right to a discharge does not create the alleged conflict rather, the filing of the chapter 7 petition, by which the debtor implicitly requests a discharge, threatens to extinguish counsel's prepetition claim.

Congress chose not to extend the disinterestedness requirement to chapter 7 cases because the interests of creditors would not be affected—there is a bankruptcy fiduciary called the bankruptcy trustee to protect their interests. Implicitly, Congress left this conflicts issue to be resolved by the local rules of professional conduct. *See Bagdan v. Beck,* 140 F.R.D. 650 (D.N.J.1991).

In Pennsylvania, Rule of Professional Conduct 1.7(b) provides:

A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after full disclosure and consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

The debtor's counsel stated in open court and in his written submission that he would vigorously oppose the Superintendent's complaint and has certainly done so to date. Therefore, he believes that his representation will not be adversely affected by the existence of a prepetition claim against the debtor. Further, the debtor was present in court, is aware of the issue posed by these two creditors and does not seek to have his counsel withdraw. To insure that this oral consent is not later challenged, I will direct that the debtor's consent be in writing and filed with this court.

Accordingly, there is no basis to disqualify debtor's counsel in this proceeding.

---

**5.** Indeed, this is not the only potential conflict which may exist in bankruptcy cases between a debtor and his counsel.

For example, in chapter 13 cases, the fees allowed to debtor's counsel for post-bankruptcy services are treated as a first priority administrative expense by virtue of sections 330(a), 503(b)(2) and 507(a)(1). Section 1322(a)(2) requires that the chapter 13 debtor's reorganization plan provide for full payment of all priority claims "unless the holder of a particular claim agrees to a different treatment...." As a result, debtor's counsel can prevent confirmation of his client's plan if the client proposes to pay him less than the full amount.